PAUL B. DERBY [SBN 211352]
pderby@skiermontderby.com
MANE SARDARYAN [SBN 287201]
msardaryan@skiermontderby.com
**SKIERMONT DERBY LLP**
633 West Fifth Street, Suite 5800
Los Angeles, California 90071
Telephone:  (213) 788-4500
Facsimile:   (213) 788-4545

*Attorneys for Plaintiff*
JOSEPH N. MULLIS.

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH N. MULLIS, an individual, | Case No. 3:23-cv-02106-LAB-BGS |
| Plaintiff, | Assigned to Hon. Larry Alan Burns, Courtroom 14A |
| v. | |
| J.P. MORGAN CHASE & CO., a Delaware corporation; RICK SMITH, an individual; NEOLOGY INC., a Delaware corporation; FRANCISCO MARTINEZ DE VELASCO, an individual; AVERY DENNISON CORP., a Delaware corporation, and DOES 1 through 20, inclusive, | **FIRST AMENDED COMPLAINT FOR DAMAGES FOR:** |
| Defendants | |

**FIRST AMENDED COMPLAINT FOR DAMAGES FOR:**

1. **Violation of the California Unfair Competition Law;**
2. **Unjust Enrichment;**
3. **Violation of the California Penal Code § 496;**
4. **Conversion;**
5. **Aiding and Abetting Conversion;**
6. **Negligence;**
7. **Fraud;**
8. **Aiding and Abetting Fraud;**
9. **Breach of Fiduciary Duty;**
10. **Aiding and Abetting Breach of Fiduciary Duty;**
11. **Fraudulent Misrepresentation;**
12. **Aiding and Abetting Fraudulent Misrepresentation;**
13. **Fraudulent Inducement;**

FIRST AMENDED COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**14. Aiding and Abetting Fraudulent Inducement**

**15. Fraudulent Concealment;**

**16. Aiding and Abetting Fraudulent Concealment;**

**17. Negligent Misrepresentation;**

**18. Constructive Fraud**

**DEMAND FOR JURY TRIAL**

Plaintiff Joseph N. "Joe" Mullis hereby complains against Defendant Neology, Inc., Defendant Francisco Martinez de Velasco, Defendant J.P. Morgan Chase & Co., Defendant Rick Smith, Defendant Avery Dennison Corporation, and Does 1 through 20, inclusive, and alleges as follows:

## JURISDICTION AND VENUE

1.      The United States District Court, Southern District of California does not have subject matter jurisdiction over this lawsuit because there is no complete diversity between the parties since Plaintiff Mr. Mullis is a resident of California and Defendant Neology Inc. is headquartered in California and Defendant Francisco Martinez de Velasco is a resident of California.

2.      The Superior Court of the State of California, for the County of San Diego, North County has subject matter jurisdiction over this lawsuit because Plaintiff brings claims under the statutory and common laws of the State of California.

3.      The Superior Court of the State of California, for the County of San Diego, North County has general personal jurisdiction over the parties because each resides and/or regularly conducts business in the State of California, has engaged in conduct in and aimed at the State of California, maintains systematic and continuous business and personal contacts with the State of California, and/or has consented to jurisdiction in California, as alleged in this Complaint.

4.      Venue is proper in the Superior Court of the State of California, for the County of San Diego, North County pursuant to California Code of Civil Procedure §§ 395(a) and 395.5 because a substantial part of the events at issue took place in the State of California in and for the County of San Diego, and Plaintiff was injured in the County of San Diego given that he resides in the County of San Diego. Also, on information and belief, Defendant Neology, Inc. is headquartered in the County of San Diego, Defendant Francisco Martinez de Velasco resides in the County of San Diego, Defendant J.P. Morgan Chase & Co. and Defendant Avery Dennison Corporation regularly transact business and maintain multiple offices and employees in the County

of San Diego, and Defendant Rick Smith regularly transacts business in the County of San Diego.

### THE PARTIES

5.      Plaintiff Joe Mullis ("Mullis") is and was at all relevant times referenced herein a resident of the State of California, County of San Diego, City of Oceanside.

6.      Defendant Neology Inc. ("Neology") is a Delaware corporation headquartered in San Diego, California.

7.      Defendant Francisco Martinez de Velasco is, upon information and belief, a resident of the State of California, County of San Diego.

8.      Defendant J.P. Morgan Chase & Co. ("J.P. Morgan") is a publicly-traded Delaware corporation headquartered in New York City, New York.

9.      Defendant Rick Smith is, upon information and belief, a resident of the State of New Jersey, County of Somerset, Hillsborough Township.

10.     Defendant Avery Dennison Corporation ("Avery") is a publicly-traded Delaware corporation headquartered in Mentor, Ohio.

11.     Mr. Mullis is ignorant of the true names and capacities of the defendants sued herein as Does 1 through 20, and therefore sues those defendants by such fictitious names.  (Does 1 through 20, with Defendants J.P. Morgan, Mr. Smith, Neology, Mr. Velasco, and Avery, are collectively referred to herein as the "Defendants.")  Plaintiff will amend this Complaint to allege their true names and capacities when and if ascertained.  Mr. Mullis is informed and believes and thereon alleges that each fictitiously-named Defendant is responsible in some manner for the events, conduct, and occurrences alleged herein, and that Mr. Mullis's damages as alleged herein were proximately caused by each of the fictitiously-named Defendants.

12.     Mr. Mullis is informed and believes and thereon alleges that at all relevant times referenced herein, each Defendant, whether expressly or fictitiously named, in addition to acting for himself, herself, or itself and on his, her, or its own behalf individually, is and was acting as the agent, servant, employee, partner, joint-venturer,

or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants and within the course, scope, and authority of that agency, service, employment, partnership, joint venture, and conspiracy. Mr. Mullis further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all of the Defendants.  Specifically, and without limitation, Mr. Mullis alleges on information and belief that the actions and breaches alleged herein and attributed to one or more specific Defendants were approved, ratified, and done with the cooperation and knowledge of each and all of the Defendants.

13.     Mr. Mullis is informed and believes and thereon alleges that there exists, and at all relevant times referenced herein there existed, a unity of interests between Defendants such that any individuality and separateness between Defendants has ceased, and adherence to the fiction of the separate existence of Defendants would permit an abuse of the corporate privilege, sanction fraud, and promote injustice.

## GENERAL FACTUAL ALLEGATIONS

14.     Neology, Inc. was founded in 2002 and is headquartered in San Diego, California. Neology is in the business of developing, manufacturing, and selling RFID technology.

15.     Mr. Mullis first began working at Neology, Inc. ("Neology") in 2003 and eventually rose to the position of General Manager of San Diego and Member of the Board of Neology.

16.     Mr. Mullis led the strategic direction of Neology's Toll Business, including the development and deployment of hardware products and system offerings, supply chain and supplier relationships, as well as product sales & marketing. Mr. Mullis also helped shape Neology's intellectual property portfolio. Mr. Mullis holds more than 50 granted patents and patent applications including patents that contributed directly to the success of Neology.

17.     In August 2010, J.P. Morgan—through its then private equity arm One Equity Partners ("OEP")—announced a voluntary takeover offer to shareholders of SMARTRAC N.V. ("Smartrac"), a Dutch manufacturer of RFID technology.

18.     In December 2010, J.P. Morgan completed the acquisition of approximately 87 percent of Smartrac shares.

19.     In December 2011, Smartrac announced the purchase of a majority ownership in Neology for $30 million plus an earn-out component of up to $9 million whereof $6 million was provided per December 31, 2011, based on the results of operations for the years 2011 and 2012.

20.     Following Smartrac's purchase of Neology, Mr. Mullis was offered a stake in the Smartrac Management Equity Program ("Smartrac MEP").

21.     In June 2012, Smartrac confirmed that Mullis was invited to join the Smartrac MEP that, in case of disinvestment of Neology, would be based on the related valuation of Neology.

22.     In September 2012, Smartrac announced that Gregory O'Hara would be appointed as chief executive officer and chairman of the management board for Smartrac. Mr. O'Hara previously served as chief investment officer of J.P. Morgan's Special Investments Group. Prior to that role, Mr. O'Hara was a Managing Director of OEP.

23.     In December 2012, Smartrac announced that Mr. O'Hara would no longer serve as CEO of Smartrac but would instead provide consultancy services to OEP and advise Smartrac on the development of new business opportunities. Christian Uhl, then CFO of Smartrac, and Nigel Sealey, then COO of Smartrac, were each appointed Co-Chairman of Smartrac.

24.     Also in December 2012, Smartrac announced that Rick Smith would join as a member of the Supervisory Board for Smartrac. Mr. Smith was a Managing Director at OEP at the time of his appointment.

25.     In May 2014, Mr. Mullis was formerly invited to participate in the Smartrac MEP.

26.     In order to participate in the Smartrac MEP, J.P. Morgan "loaned" Mr. Mullis €50,000. Yet Mr. Mullis never actually took possession of the loaned amount. Instead, the €50,000 was used by Smartrac as payment for Mr. Mullis' interest in the Smartrac MEP. Mr. Mullis does not claim that the amount in controversy in the matter is €50,000.

27.     In November 2014, Mr. Smith became Head of Private Investments at J.P. Morgan while retaining his position as board member at Smartrac and eventually obtaining the position of Chairman of the Supervisory Board.

28.     In June 2017, Neology acquired 3M's tolling and automated license/number plate recognition business, which had annual sales of approximately $40 million. 3M received $833 million for the sale of its tolling business, together with its separate sale of its identity management business to Gemalto N.V.

29.     In September 2017, OEP completed the acquisition of Neology from Smartrac. Neology was valued at that time by J.P. Morgan and J.P. Morgan held Neology's debt. Key OEP players in OEP's acquisition of Neology from Smartrac included Joerg Zirener and Philipp von Meurers, both employees of OEP and former colleagues of Mr. Smith.

30.     Upon information and belief, Defendants transferred valuable intellectual property from Neology to Smartrac in order to devalue Neology at the time of the sale.

31.     Upon information and belief, Defendants also maintained separate cap tables for the Neology sale in order to devalue Neology at the time of the sale.

32.     On September 19, 2017, Mr. Meurers informed Mr. Mullis by email that his investment in the Smartrac MEP had a value of $0: "Following your exit from the Smartrac MEP we wanted to inform you of the exit calculation of your €50,000 investment. Pursuant to the signed agreement, Smartrac's LTM (latest twelve months) adjusted EBITDA is multiplied by the factor of 8x to arrive at Enterprise Value (EV).

As you can see in the attachment, LTM Jun-17A PF adjusted EBITDA was €174k which yields an EV of €1.4mm. Adding net cash of €54.6mm gives a Total Equity Value of €55.9mm. However, since Preferred Equity has accrued up to €97.7mm as per 30/6/2017, the value of Common Equity is negative at (€41.8mm) and hence the MEP vehicle at (€3.3mm). Therefore, you will be paid back the original cost of your investment less any applicable loan to the extent taken out by you to finance the investment." (Exhibit 1).

33.     Defendant Francisco Martinez de Velasco, CEO of Neology, and Mr. Zirener were copied on the email and, upon information and belief, took part in the calculations leading to the conclusion that Mr. Mullis's investment in Smartrac MEP had a value of $0. (Exhibit 1).

34.     In response, Mullis first asked Mr. Meurers and then Christian Uhl—CEO of Smartrac—for additional information regarding the basis for the valuation of Mullis' interest in the Smartrac MEP. Specifically, Mr. Mullis wanted to confirm the value of the sale of Neology and whether that value had been included in the fair market value determination for the Smartrac MEP. Mullis also wanted to confirm what value had been ascribed to Neology. (Exhibit 1).

35.     On September 20, 2017, Mr. Uhl stated that Mr. Mullis was not entitled to any money under the Smartrac MEP: "First of all, the deals are not comparable and I will not start doing so. Secondly, and I believe that Jörg has made this very transparent to you guys, SMARTRAC has significantly contributed to your new MEP as per an agreement between OEP and SMT. I thus believe that indeed I have paid a significant amount to you guys via this instrument. With respect to your further comments – you are exiting the company via a sale of the company. In doing so you are also exiting the MEP of SMARTRAC as a good leaver and you are treated as such. Based on the documentation you have received at the time you have been included in the program the rules for exiting the program and the underlying calculation method are crystal clear – we (OEP and SMT) have simply followed these rules. I can understand that you

are not happy with the result of such calculation but the result is the result. Given the fact that I have contributed to you guys personally in other ways (MEP contribution) I sincerely believe that you should not feel mistreated." (Exhibit 1).

36.    Mr. Mullis never received details regarding the agreement to purchase Neology or the valuation of Neology by J.P. Morgan (the "Neology Valuation") and conclusions therein. Dr. Jörg Zirener, Neology's senior managing director and board member at Smartrac, served as a representative of J.P. Morgan; and, on information and belief, J.P. Morgan was responsible for the Neology Valuation.

37.    Mr. Mullis had no choice but to believe Mr. Uhl since Mr. Mullis did not have access to any of the documents that would have demonstrated his entitlement to funds under the Smartrac MEP. Moreover, the tone of Mr. Mullis' communications with Mr. Uhl made it clear that if he continued to pursue his line of inquiry regarding the Smartrac MEP, he would jeopardize his new position at Neology following the sale to OEP.

38.    Mr. Mullis was eventually coerced into signing a release of any claims related to the Smartrac MEP.

39.    In March 2020, Defendant Avery acquired Smartrac for €225 million.

40.    In September 2022, Mr. Mullis was terminated from his position at Neology after inquiring about the status of his interest in a separate MEP offered directly with Neology (the "Neology MEP"), thus confirming his previous fears that if he asked too many questions regarding the Smartrac MEP, he would be fired.

41.    During conversations with Neology employees, Mr. Mullis came to learn that he would not receive any money from the Neology MEP.

42.    A short time later, Mr. Mullis was indeed informed that his interest in the Neology MEP has zero value. It was then that Mr. Mullis realized for the first time that the same pattern of fraudulent behavior by which he was denied compensation for his interest in the Neology MEP also occurred earlier when he was denied any compensation for his interest in the Smartrac MEP. Moreover, many of the same

FIRST AMENDED COMPLAINT FOR DAMAGES                                                    7

individuals were involved in both the Smartrac MEP and Neology MEP, including Defendant Mr. Velasco, Dr. Zirener, and Mr. Uhl, now serving on Neology's Board of Directors representing J.P. Morgan.

43.     In December 2022, Mr. Mullis reached out to Mr. Uhl via email from his attorney, John Lord, to obtain additional information regarding the Smartrac MEP. (Exhibit 2).

44.     In January 2023, Mr. Uhl responded by email that he could not provide any information due to non-disclosure obligations. (Exhibit 2).

45.     On February 19, 2023, Mr. Mullis asked Mr. Smith for help obtaining the documentation he sought from Mr. Uhl. Mr. Smith responded: "Joe, Thank you for reaching out. My colleagues Jordan Costa and Angela Liuzzi will follow up. Best, Rick." Mr. Costa is Executive Director at J.P. Morgan and leads J.P. Morgan's Alternative Investment fund services team for the America's. Ms. Luzzi is a Managing Director and Associate General Counsel to Corporate Treasury, the Chief Investment Office and Private Equity Group at J.P. Morgan. Upon information and belief, Mr. Smith had no intention of helping Mr. Mullis retrieve the missing documents. (Exhibit 2).

46.     On March 15, 2023, Ms. Liuzzi responded: "Joe, Sorry for the delay in response but I have been trying to gather information on your inquiry. I am sure you can appreciate that since the events you are discussing are over 5 years ago and relate to an entity that we no longer have an ownership interest in the process of getting the information is a challenge. I have several more sources to go to for information and will come back to you at that time. Your patience is appreciated. Best regards, Angela." Upon information and belief, Ms. Liuzzi had no intention of helping Mr. Mullis retrieve the missing documents. (Exhibit 2).

47.     J.P. Morgan never claimed that it did not have access to the information Mr. Mullis requested or that Mr. Mullis did not have a right to such information. J.P.

1   Morgan also never denied that it had an ownership interest in Smartrac and had access

2   to similar documents through that ownership relationship.

3       48.    Mr. Mullis never received any of the information he requested from

4   Defendant Mr. Smith and Defendant J.P. Morgan.

**<u>VIOLATIONS ALLEGED</u>**

**<u>FIRST CAUSE OF ACTION</u>**

**(Violation of the California Unfair Competition Law –**

**Against Defendants J.P. Morgan, Neology, and Avery)**

9       49.    Mr. Mullis incorporates the allegations of paragraphs 1 through 48 above

10   as if set forth fully herein.

11       50.    California Business & Professions Code § 17200, *et seq.* prohibits acts of

12   "unfair competition," which is defined by Business & Professions Code § 17200 as

13   including "any unlawful, unfair or fraudulent business act or practice . . . ."

14       51.    California Business & Professions Code § 17204 permits an action for

15   relief for unfair business acts or practices to be brought "by a person who has suffered

16   injury in fact and has lost money or property as a result of the unfair competition."

17       52.    Defendant J.P. Morgan at all relevant times controlled the actions of

18   Smartrac and Neology through its ownership interest in both entities.

19       53.    Defendant J.P. Morgan also controlled the actions of Smartrac, and its

20   then subsidiary, Neology, through its employee, Defendant Rick Smith, who was

21   Chairman for the Special Advisory Board for Smartrac during the relevant time period.

22       54.    J.P. Morgan, Smartrac, and Neology conspired to and did undervalue

23   Neology for the purposes of calculating Mr. Mullis' compensation under the Smartrac

24   OEP. Defendant J.P. Morgan, Smartrac, and Defendant Neology's actions constituted

25   unfair business practices.

26       55.    J.P. Morgan, Smartrac, and Neology conspired to and did falsely indicate

27   to Mr. Mullis that his interest in the Smartrac MEP had zero value. J.P. Morgan,

28   Smartrac, and Neology's actions constituted unfair business practices.

56.     J.P. Morgan, Smartrac, and Neology conspired to and did transfer valuable intellectual property from Neology to Smartrac in order to undervalue Neology. J.P. Morgan, Smartrac, and Neology's actions constituted unfair business practices.

57.     The actions of J.P. Morgan, Smartrac, and Neology described about constituted unfair business practices under the California Unfair Competition Law since the gravity of the harm to Mr. Mullis outweighs the utility of their conduct.

58.     Mr. Mullis suffered harm as the result of J.P. Morgan, Smartrac, and Neology's unfair business practices because he was prohibited from obtaining fair compensation for the interests granted to him under the Smartrac OEP.

59.     Defendant Avery is responsible for Smartrac's actions because Avery acquired Smartrac in March 2020.

60.     The statute of limitations for Mr. Mullis' unfair business practices claim should be tolled because Mr. Mullis was unable to know he had an unfair business practices claim against Defendants J.P. Morgan, Neology, and Avery since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner and did not know about Defendants J.P. Morgan, Neology, and Avery's unfair business practices until September 2022 at the earliest.

61.     The statute of limitations for Mr. Mullis' unfair business practices claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

62.     The statute of limitations for Mr. Mullis' unfair business practices claim should also be tolled because Mr. Mullis will have provided notice to Defendants J.P. Morgan, Neology and Avery in a timely manner, Defendants J.P. Morgan, Neology, and Avery are not prejudiced by the timing of Mr. Mullis' unfair business practices claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants J.P. Morgan, Neology, and Avery.

63.     As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

64.     Mr. Mullis is informed and believes, and therefore alleges, that Defendants J.P. Morgan, Neology, and Avery acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for Mullis's rights. Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

## SECOND CAUSE OF ACTION

### (Unjust Enrichment – Against Defendants J.P. Morgan, Avery, and Neology)

65.     Mullis incorporates the allegations of paragraphs 1 through 64 above as if set forth fully herein.

66.     Defendant J.P. Morgan received a benefit from Mr. Mullis being prohibited from obtaining fair compensation for the interests granted to him under the Smartrac OEP because the amount J.P. Morgan received from the sale of Smartrac to Avery in 2020 was greater than it otherwise would have been.

67.     It is unjust for J.P. Morgan to benefit at the expense of Mr. Mullis, who was cheated out of the money owed to him under the Smartrac OEP.

68.     Smartrac received a benefit from Mr. Mullis being prohibited from obtaining fair compensation for the interests granted to him under the Smartrac OEP in the form of retained funds.

69.     It is unjust for Smartrac to benefit at the expense of Mr. Mullis, who was cheated out of the money owed to him under the Smartrac OEP.

70.     Defendant Avery is responsible for Smartrac's actions because Avery acquired Smartrac in March 2020.

71.     Defendant Neology received a benefit from Mr. Mullis being prohibited from obtaining fair compensation for the interests granted to him under the Smartrac OEP through contributions from Smartrac to Neology's MEP in exchange for Neology going along with the undervaluation of Neology.

FIRST AMENDED COMPLAINT FOR DAMAGES

11

72.     It is unjust for Neology to benefit at the expense of Mr. Mullis, who was cheated out of the money owed to him under the Smartrac OEP.

73.     The statute of limitations for Mr. Mullis' unjust enrichment claim should be tolled because Mr. Mullis was unable to know he had an unjust enrichment claim against Defendants J.P. Morgan, Avery, and Neology since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner and did not know about Defendants J.P. Morgan, Neology, and Avery's unjust enrichment until September 2022 at the earliest.

74.     The statute of limitations for Mr. Mullis' unjust enrichment claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

75.     The statute of limitations for Mr. Mullis' unjust enrichment claim should also be tolled because Mr. Mullis will have provided notice to Defendants J.P. Morgan, Avery and Neology in a timely manner, Defendants J.P. Morgan, Avery, and Neology are not prejudiced by the timing of Mr. Mullis' unjust enrichment claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants J.P. Morgan, Avery, and Neology.

76.     As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

77.     Mullis is informed and believes, and therefore alleges, that Defendants J.P. Morgan, Neology, and Avery acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for Mullis' rights.  Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

**THIRD CAUSE OF ACTION**

**(Violation of Cal. Penal Code § 496 – Against All Defendants)**

78.   Mullis incorporates the allegations of paragraphs 1 through 77 above as if set forth fully herein.

79.   California Penal Code § 484 defines "theft," and that section provides: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property ... is guilty of theft."

80.   California Penal Code § 496(a) provides that: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained" is guilty of a public offense.

81.   California Penal Code § 496(a) further provides that "a principal in the actual theft of the property may be convicted pursuant to this section."

82.   Smartrac withheld Mr. Mullis' property by preventing Mr. Mullis from obtaining fair compensation for the interests granted to him under the Smartrac OEP.

83.   Defendant Avery is responsible for Smartrac's actions because Avery acquired Smartrac in March 2020.

84.   Defendants J.P. Morgan and Mr. Smith knowingly aided in concealing Mr. Mullis' property interest resulting from the Smartrac OEP by refusing to provide Mr. Mullis the documents he requested in February 2023 despite indicating that they would assist in doing so.

85.   Defendant J.P. Morgan also received property stolen from Mr. Mullis when Mr. Mullis was denied his fair share under the Smartrac OEP and when J.P.

Morgan later sold its interests in Smartrac to Avery in a transaction worth a total of €220 million.

86.     Defendants Neology and Mr. Velasco knowingly aided in concealing Mr. Mullis' property interest resulting from his interests in the Smartrac OEP by assisting with and concealing the devaluation of Neology for the purposes of denying Mr. Mullis' fair compensation under the Smartrac OEP.

87.     Defendant Mr. Velasco was copied on emails from September 2017 in which Smartrac informed Mr. Mullis that his share in the Smartrac OEP had no value.

88.     Defendants conspired to and did transfer valuable intellectual property from Neology to Smartrac in order to devalue Neology.

89.     Defendants conspired to and did take Mr. Mullis' property interest in the Smartrac MEP.

90.     Defendants actually stole, withheld, and/or aided in the concealment, sale, or withholding of Mullis's property, knowing that property had been withheld and/or obtained in a manner constituting theft.  Specifically, Defendants prevented Mr. Mullis from obtaining fair compensation for the interests granted to him under the Smartrac OEP.

91.     Defendants have also facilitated and/or benefitted from that misconduct, the withholding of money that should have been paid to Mullis in a manner constituting theft, fraudulent withholding, and necessary concealment, as alleged herein.

92.     Mr. Mullis has been injured by Defendants' conduct, which conduct represents a violation of California Penal Code § 496(a), in an amount to be proven at trial.

93.     The statute of limitations for Mr. Mullis' violation of Cal. Penal Code § 496 claim should be tolled because Mr. Mullis was unable to know that he had a violation of Cal. Penal Code § 496 claim against Defendants since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP

despite having requested such information in a timely manner and did not know about Defendants' violation of Cal. Penal Code § 496 until September 2022 at the earliest.

94.     The statute of limitations for Mr. Mullis' violation of Cal. Penal Code § 496 claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

95.     The statute of limitations for Mr. Mullis' violation of Cal. Penal Code § 496 claim should also be tolled because Mr. Mullis will have provided notice to Defendants in a timely manner, Defendants are not prejudiced by the timing of Mr. Mullis' violation of Cal. Penal Code § 496 claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants.

96.     As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

97.     Pursuant to subdivision (c) of Cal. Penal Code § 496, Mullis may (and here, does) bring a civil action for three times the amount of his actual damages, costs, of suit, and reasonable attorneys' fees.

98.     Mullis is informed and believes, and therefore alleges, that Defendants acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for Mullis's rights.  Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

## **FOURTH CAUSE OF ACTION**

### **(Conversion – Against Defendants Avery and J.P. Morgan)**

99.     Mr. Mullis incorporates the allegations of paragraphs 1 through 98 above as if set forth fully herein.

100.   Mr. Mullis had property interests through his participation in the Smartrac MEP.

101.   Smartrac engaged in conversion of Mr. Mullis' property interests in the Smartrac MEP by wrongfully denying that such property interests had an any value and by retaining the property interests in the Smartrac MEP that should rightfully have

been granted to Mr. Mullis.

102.   Defendant Avery is responsible for Smartrac's actions because Avery acquired Smartrac in March 2020.

103.   Defendant J.P. Morgan engaged in conversion of Mr. Mullis' property interests in the Smartrac MEP by benefiting from the interests being retained by Smartrac through J.P. Morgan's ownership in Smartrac.

104.   Defendant J.P. Morgan further engaged in conversion of Mr. Mullis' property through the proceeds it received from the sale of Smartrac to Avery in March 2020 since the sale price of Smartrac necessarily included what otherwise would have been Mr. Mullis' rights in the Smartrac MEP.

105.   The statute of limitations for Mr. Mullis' conversion claim should be tolled because Mr. Mullis was unable to know that he had a conversion against Defendants Avery and J.P. Morgan since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner and did not know about Defendants Avery and J.P. Morgan's conversion until September 2022 at the earliest.

106.   The statute of limitations for Mr. Mullis' conversion claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

107.   The statute of limitations for Mr. Mullis' conversion claim should also be tolled because Mr. Mullis will have provided notice to Defendants J.P. Morgan and Avery in a timely manner, Defendants Avery and J.P. Morgan are not prejudiced by the timing of Mr. Mullis' conversion claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants Avery and J.P. Morgan.

108.   As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

109.   Mullis is informed and believes, and therefore alleges, that Defendants Avery and J.P. Morgan acted with malice, oppression, and fraud, and a deliberate

1  intent to hurt and injure Mullis, or with conscious disregard for Mullis's rights.

2  Accordingly, an award of punitive damages is justified in an amount according to

3  proof at trial.

4  ### FIFTH CAUSE OF ACTION

5  **(Aiding and Abetting Conversion – Against Defendants Neology and Mr. Velasco)**

6  110.   Mr. Mullis incorporates the allegations of paragraphs 1 through 109 above

7  as if set forth fully herein.

8  111.   Mr. Mullis had property interests through his participation in the Smartrac

9  MEP.

10  112.   As set forth in paragraphs 100 through 104 above, Defendants J.P.

11  Morgan and Avery engaged in conversion of Mr. Mullis' property interest in the

12  Smartrac MEP.

13  113.   Defendant Neology aided and abetted Defendants J.P. Morgan and

14  Avery's conversion of Mr. Mullis' property by agreeing to devalue Neology for the

15  purposes of preventing Mr. Mullis from obtaining his property interest under the

16  Smartrac MEP.

17  114.   Defendants conspired to and did transfer valuable intellectual property

18  from Neology to Smartrac in order to devalue Neology.

19  115.   Defendant Mr. Velasco was copied on emails from September 2017 in

20  which Smartrac informed Mr. Mullis that his share in the Smartrac OEP had no value

21  knowing that the information provided was false.

22  116.   Defendant Neology and Mr. Velasco assisted with deceiving Mr. Mullis

23  by approving modified cap tables reflecting the incorrect value of Neology.

24  117.   The statute of limitations for Mr. Mullis' aiding and abetting conversion

25  claim should be tolled because Mr. Mullis was unable to know that he had an aiding

26  and abetting conversion claim against Defendants Neology and Mr. Velasco since Mr.

27  Mullis did not have the relevant information regarding calculation of his share in the

28  Smartrac MEP despite having requested such information in a timely manner and did

not know about Defendant Neology and Mr. Velasco's aiding and abetting conversion until September 2022 at the earliest.

118. The statute of limitations for Mr. Mullis' aiding and abetting conversion claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

119. The statute of limitations for Mr. Mullis' aiding and abetting conversion claim should also be tolled because Mr. Mullis will have provided notice to Defendants Neology and Velasco in a timely manner, Defendants Neology and Velasco are not prejudiced by the timing of Mr. Mullis' aiding and abetting conversion claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants Neology and Velasco.

120. As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

121. Mullis is informed and believes, and therefore alleges, that Defendants Neology and Mr. Velasco acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for Mullis's rights. Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

## **SIXTH CAUSE OF ACTION**

### **(Negligence – Against All Defendants)**

122. Mullis incorporates the allegations of paragraphs 1 through 121 above as if set forth fully herein.

123. Smartrac, as Mr. Mullis' employer, owed him a duty of care to make certain he was treated fairly with respect to the Smartrac MEP.

124. Smartrac breached its duty to Mr. Mullis by failing to make certain that the Smartrac MEP was administered properly.

125.   As a result of Smartrac's failure to make certain the Smartrac MEP was administered fairly, Mr. Mullis suffered damages in the form of the loss of the true value of his interest in the Smartrac MEP.

126.   Defendant Avery is responsible for Smartrac's actions because Avery acquired Smartrac in March 2020.

127.   Mr. Smith, as Chairman of the Supervisory Board of Smartrac, owed Mr. Mullis a duty of care to make certain the Smartrac MEP was administered properly.

128.   Mr. Smith breached his duty by failing to properly supervise the Smartrac MEP, which led to Mr. Mullis being falsely informed that his interest in the Smartrac MEP had zero value.

129.   As a result of Mr. Smith's failure to properly supervise, Mr. Mullis suffered damages in the form of loss of the true value of his interest in the Smartrac MEP.

130.   Mr. Smith was at all times an employee of J.P. Morgan while he served as Chairman of the Supervisory Board of Smartrac.

131.   Mr. Smith served as the Chairman of the Supervisory Board of Smartrac in order to protect the interest of J.P. Morgan in Smartrac.

132.   J.P. Morgan owed Mr. Mullis a duty of care to make certain he was treated fairly with respect to the Smartrac MEP.

133.   J.P. Morgan breached its duty to Mr. Mullis by failing to make certain that the Smartrac MEP was administered properly.

134.   As a result of J.P. Morgan's failure to properly monitor the Smartrac MEP, Mr. Mullis suffered damages in the form of the loss of the true value of his interest in the Smartrac MEP.

135.   Neology, as Mr. Mullis' direct employer, owed him a duty of care to make certain he was treated fairly with respect to the Smartrac MEP.

136.   Neology breached its duty to Mr. Mullis by failing to make certain that the Smartrac MEP was administered properly.

137.   As a result of Neology's failure to make certain the Smartrac MEP was administered fairly, Mr. Mullis suffered damages in the form of the loss of the true value of his interest in the Smartrac MEP.

138.   Mr. Velasco, as CEO of Neology, owed Mr. Mullis a duty of care to make certain he was treated fairly with respect to the Smartrac MEP.

139.   Mr. Velasco breached his duty to Mr. Mullis by failing to make certain that the Smartrac MEP was administered properly.

140.   As a result of Mr. Velasco's failure to make certain the Smartrac MEP was administered fairly, Mr. Mullis suffered damages in the form of the loss of the true value of his interest in the Smartrac MEP.

141.   The statute of limitations for Mr. Mullis' negligence claim should be tolled because Mr. Mullis was unable to know he had a negligence claim against Defendants since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner and did not know about Defendants' negligence until September 2022 at the earliest.

142.   The statute of limitations for Mr. Mullis' negligence claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

143.   The statute of limitations for Mr. Mullis' negligence claim should also be tolled because Mr. Mullis will have provided notice to Defendants in a timely manner, Defendants are not prejudiced by the timing of Mr. Mullis' negligence claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants.

144.   As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

145.   Mullis is informed and believes, and therefore alleges, that Defendants acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure

1   Mullis, or with conscious disregard for Mullis's rights.  Accordingly, an award of

2   punitive damages is justified in an amount according to proof at trial.

3   ### SEVENTH CAUSE OF ACTION

4   **(Fraud – Against All Defendants)**

5   146.   Mullis incorporates the allegations of paragraphs 1 through 145 above as

6   if set forth fully herein.

7   147.   On September 19, 2017, Mr. Meurers informed Mr. Mullis by email that

8   his investment in the Smartrac MEP had a value of $0: "Following your exit from the

9   Smartrac MEP we wanted to inform you of the exit calculation of your €50,000

10   investment. Pursuant to the signed agreement, Smartrac's LTM (latest twelve months)

11   adjusted EBITDA is multiplied by the factor of 8x to arrive at Enterprise Value (EV).

12   As you can see in the attachment, LTM Jun-17A PF adjusted EBITDA was €174k

13   which yields an EV of €1.4mm. Adding net cash of €54.6mm gives a Total Equity

14   Value of €55.9mm. However, since Preferred Equity has accrued up to €97.7mm as

15   per 30/6/2017, the value of Common Equity is negative at (€41.8mm) and hence the

16   MEP vehicle at (€3.3mm). Therefore, you will be paid back the original cost of your

17   investment less any applicable loan to the extent taken out by you to finance the

18   investment." (Exhibit 1).

19   148.   Defendant Mr. Velasco and Mr. Zirener were copied on the email and

20   took part in the calculations leading to the conclusion that Mr. Mullis's investment in

21   Smartrac MEP had a value of $0. (Exhibit 1).

22   149.   The statements made in the September 19, 2017 email described above

23   were false as Mr. Mullis's investment in Smartrac MEP had a value greater than $0

24   and Neology had been artificially devalued in order to avoid paying Mr. Mullis just

25   compensation for his investment in the Smartrac MEP.

26   150.   In response, Mr. Mullis first asked Mr. Meurers and then Christian Uhl—

27   CEO of Smartrac—for additional information regarding the basis for the valuation of

28   Mullis' interest in the Smartrac MEP. Specifically, Mr. Mullis wanted to confirm the

value of the sale of Neology and whether that value had been included in the fair market value determination for the Smartrac MEP. Mr. Mullis also wanted to confirm what value had been ascribed to Neology. (Exhibit 1).

151.    On September 20, 2017, Mr. Uhl stated that Mr. Mullis was not entitled to any money under the Smartrac MEP: "First of all, the deals are not comparable and I will not start doing so. Secondly, and I believe that Jörg has made this very transparent to you guys, SMARTRAC has significantly contributed to your new MEP as per an agreement between OEP and SMT. I thus believe that indeed I have paid a significant amount to you guys via this instrument. With respect to your further comments – you are exiting the company via a sale of the company. In doing so you are also exiting the MEP of SMARTRAC as a good leaver and you are treated as such. Based on the documentation you have received at the time you have been included in the program the rules for exiting the program and the underlying calculation method are crystal clear – we (OEP and SMT) have simply followed these rules. I can understand that you are not happy with the result of such calculation but the result is the result. Given the fact that I have contributed to you guys personally in other ways (MEP contribution) I sincerely believe that you should not feel mistreated."  (Exhibit 1).

152.    The statements made in the September 20, 2017 email described above were false as Mr. Mullis's investment in Smartrac MEP had a value greater than $0 and Neology had been artificially devalued in order to avoid paying Mr. Mullis just compensation for his investment in the Smartrac MEP.

153.    Smartrac knew that the statements by Mr. Meurers and Mr. Uhl made on behalf of Smartrac were false and Mr. Mullis' investment in the Smartrac MEP had value.

154.    Smartrac intended to induce Mr. Mullis' reliance on those statements.

155.    Mr. Mullis reasonably relied on the statements of Smartrac.

156.    As a result, Mr. Mullis suffered in the form of the loss of the true value of his investment in the Smartrac MEP.

157. Defendant Avery is responsible for Smartrac's actions because Avery acquired Smartrac in March 2020.

158. Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco conspired with Smartrac in order to defraud Mr. Mullis and prevent him from obtaining the true value of his interest in the Smartrac MEP.

159. Defendants conspired to and did transfer valuable intellectual property from Neology to Smartrac in order to devalue Neology.

160. Defendants J.P. Morgan and Mr. Smith knew about the attempts to devalue Neology for the purposes of preventing Mr. Mullis from obtaining the true value of his interest in the Smartrac MEP and conspired to assist with the devaluation.

161. Defendants Neology and Mr. Velasco knew about the attempts to devalue Neology for the purposes of preventing Mr. Mullis from obtaining the true value of his interest in the Smartrac MEP and conspired to assist with the devaluation.

162. The statute of limitations for Mr. Mullis' fraud claim should be tolled because Mr. Mullis was unable to know he had a fraud claim against Defendants since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner and did not know about Defendants' fraud until September 2022 at the earliest.

163. The statute of limitations for Mr. Mullis' fraud claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

164. The statute of limitations for Mr. Mullis' fraud claim should also be tolled because Mr. Mullis will have provided notice to Defendants in a timely manner, Defendants are not prejudiced by the timing of Mr. Mullis' fraud claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants.

165. As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

166.   Mullis is informed and believes, and therefore alleges, that Defendants acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for Mullis's rights. Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

## EIGHTH CAUSE OF ACTION

**(Aiding and Abetting Fraud – Against Defendants J.P. Morgan, Mr. Smith, Neology, and Mr. Velasco)**

167.   Mullis incorporates the allegations of paragraphs 1 through 166 above as if set forth fully herein.

168.   As set forth in paragraphs 147 through 157 above, Smartrac engaged in fraud through its email communications with Mr. Mullis on September 19 and September 20, 2017 indicating that the value of Mr. Mullis' interest in the Smartrac MEP was $0.

169.   Defendants J.P. Morgan and Mr. Smith had actual knowledge that Smartrac's statements to Mr. Mullis regarding the Smartrac MEP were false and misleading.

170.   Defendants J.P. Morgan and Mr. Smith provided substantial assistance to Smartrac's fraudulent behavior through oversight of Smartrac's supervisory board.

171.   Defendants J.P. Morgan and Mr. Smith provided substantial assistance to Smartrac's fraudulent behavior by agreeing to assist Mr. Mullis with obtaining information relevant to the fraud knowing they would fail to deliver on that promise.

172.   Defendants Neology and Mr. Velasco had actual knowledge that Smartrac's statements to Mr. Mullis regarding the Smartrac MEP were false and misleading.

173.   Defendants Neology and Mr. Velasco provided substantial assistance to Smartrac in terms of misleading Mr. Mullis regarding the value of his interest in the Smartrac MEP by assisting with and concealing the devaluation of Neology for the

1   purposes of preventing Mr. Mullis from obtaining adequate compensation for his

2   shares in the Smartrac MEP.

3       174.   The statute of limitations for Mr. Mullis' aiding and abetting fraud claim

4   should be tolled because Mr. Mullis was unable to know he had an aiding and abetting

5   fraud claim against Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco

6   since Mr. Mullis did not have the relevant information regarding calculation of his

7   share in the Smartrac MEP despite having requested such information in a timely

8   manner and did not know about Defendants J.P. Morgan, Mr. Smith, Neology and Mr.

9   Velasco's aiding and abetting fraud until September 2022 at the earliest.

10      175.   The statute of limitations for Mr. Mullis' aiding and abetting fraud claim

11  should also be tolled because Mr. Mullis was forced to end his inquiry regarding the

12  Smartrac MEP under duress for fear he would lose his job.

13      176.   The statute of limitations for Mr. Mullis' aiding and abetting fraud claim

14  should also be tolled because Mr. Mullis will have provided notice to Defendants J.P.

15  Morgan, Mr. Smith, Neology and Mr. Velasco in a timely manner, Defendants J.P.

16  Morgan, Mr. Smith, Neology and Mr. Velasco are not prejudiced by the timing of Mr.

17  Mullis' aiding and abetting fraud claim, and Mr. Mullis acted in good faith and

18  reasonable conduct in filing the claim against Defendants J.P. Morgan, Mr. Smith,

19  Neology and Mr. Velasco.

20      177.   As a direct and proximate result of the acts described herein, Plaintiff was

21  damaged in an amount to be proven at trial.

22      178.   Mullis is informed and believes, and therefore alleges, that Defendants

23  J.P. Morgan, Mr. Smith, Neology, and Mr. Velasco acted with malice, oppression, and

24  fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for

25  Mullis's rights.  Accordingly, an award of punitive damages is justified in an amount

26  according to proof at trial.

27

28

<u>**NINTH CAUSE OF ACTION**</u>

**(Breach of Fiduciary Duty – Against Defendant Avery)**

179.    Mullis incorporates the allegations of paragraphs 1 through 178 above as if set forth fully herein.

180.    As the plan administrator for the Smartrac MEP, Smartrac owed a fiduciary duty to Mr. Mullis as an investor in the Smartrac MEP.

181.    Smartrac breach its fiduciary duty to Mr. Mullis by failing to assign a proper value to Mr. Mullis' interest in the Smartrac MEP in September 2017.

182.    As a result of Smartrac's breach of its fiduciary duty owed to Mr. Mullis, Mr. Mullis suffered damages in the form of the loss of the true value of Mr. Mullis' interest in the Smartrac MEP.

183.    Defendant Avery is responsible for Smartrac's actions because Avery acquired Smartrac in March 2020.

184.    The statute of limitations for Mr. Mullis' breach of fiduciary duty claim should be tolled because Mr. Mullis was unable to know he had a breach of fiduciary duty claim against Defendant Avery since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner and did not know about Defendant Avery's breach of fiduciary duty until September 2022 at the earliest.

185.    The statute of limitations for Mr. Mullis' breach of fiduciary duty claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

186.    The statute of limitations for Mr. Mullis' breach of fiduciary duty claim should also be tolled because Mr. Mullis will have provided notice to Defendant Avery in a timely manner, Defendant Avery is not prejudiced by the timing of Mr. Mullis' breach of fiduciary duty claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendant Avery.

187.   As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

188.   Mullis is informed and believes, and therefore alleges, that Defendant Avery acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for Mullis's rights.  Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

## TENTH CAUSE OF ACTION

### (Aiding and Abetting Breach of Fiduciary Duty – Against Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco)

189.   Mullis incorporates the allegations of paragraphs 1 through 188 above as if set forth fully herein.

190.   As set forth in paragraphs 180 through 183 above, Smartrac breached the fiduciary duty owed to Mr. Mullis by purposely devaluing Neology and stating that the value of Mr. Mullis' interest in the Smartrac MEP was $0.

191.   Defendants J.P. Morgan and Mr. Smith had actual knowledge that Smartrac breached its fiduciary duty owed to Mr. Mullis.

192.   Defendants J.P. Morgan and Mr. Smith provided substantial assistance to Smartrac's breach of its fiduciary duty owed to Mr. Mullis through oversight of Smartrac's supervisory board.

193.   Defendants J.P. Morgan and Mr. Smith provided substantial assistance to Smartrac's breach of fiduciary by agreeing to assist Mr. Mullis with obtaining information relevant to the fraud knowing they would fail to deliver on that promise.

194.   Defendants Neology and Mr. Velasco had actual knowledge that Smartrac breached its fiduciary duty owed to Mr. Mullis.

195.   Defendants Neology and Mr. Velasco provided substantial assistance to Smartrac in in terms of breaching Smartrac's fiduciary duty owed to Mr. Mullis by assisting with and concealing the devaluation of Neology for the purposes of

preventing Mr. Mullis from obtaining adequate compensation for his shares in the Smartrac MEP.

196.   Defendants conspired to and did transfer valuable intellectual property from Neology to Smartrac in order to devalue Neology.

197.   The statute of limitations for Mr. Mullis' aiding and abetting breach of fiduciary duty claim should be tolled because Mr. Mullis was unable to know he had an aiding and abetting breach of fiduciary duty claim against Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner and did not know about Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco's aiding and abetting breach of fiduciary duty until September 2022 at the earliest.

198.   The statute of limitations for Mr. Mullis' aiding and abetting breach of fiduciary duty claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

199.   The statute of limitations for Mr. Mullis' aiding and abetting breach of fiduciary duty claim should also be tolled because Mr. Mullis will have provided notice to Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco in a timely manner, Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco are not prejudiced by the timing of Mr. Mullis' aiding and abetting breach of fiduciary duty claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco.

200.   As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

201.   Mullis is informed and believes, and therefore alleges, that Defendants J.P. Morgan, Mr. Smith, Neology, and Mr. Velasco acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for

Mullis's rights.  Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

### ELEVENTH CAUSE OF ACTION

### (Fraudulent Misrepresentation – Against All Defendants)

202.   Mullis incorporates the allegations of paragraphs 1 through 201 above as if set forth fully herein.

203.   On September 19, 2017, Mr. Meurers informed Mr. Mullis by email that his investment in the Smartrac MEP had a value of $0: "Following your exit from the Smartrac MEP we wanted to inform you of the exit calculation of your €50,000 investment. Pursuant to the signed agreement, Smartrac's LTM (latest twelve months) adjusted EBITDA is multiplied by the factor of 8x to arrive at Enterprise Value (EV). As you can see in the attachment, LTM Jun-17A PF adjusted EBITDA was €174k which yields an EV of €1.4mm. Adding net cash of €54.6mm gives a Total Equity Value of €55.9mm. However, since Preferred Equity has accrued up to €97.7mm as per 30/6/2017, the value of Common Equity is negative at (€41.8mm) and hence the MEP vehicle at (€3.3mm). Therefore, you will be paid back the original cost of your investment less any applicable loan to the extent taken out by you to finance the investment." (Exhibit 1).

204.   Defendant Mr. Velasco and Mr. Zirener were copied on the email and took part in the calculations leading to the conclusion that Mr. Mullis's investment in Smartrac MEP had a value of $0. (Exhibit 1).

205.   The statements made in the September 19, 2017 email described above were false as Mr. Mullis's investment in Smartrac MEP had a value greater than $0 and Neology had been artificially devalued in order to avoid paying Mr. Mullis just compensation for his investment in the Smartrac MEP.

206.   In response, Mullis first asked Mr. Meurers and then Christian Uhl—CEO of Smartrac—for additional information regarding the basis for the valuation of Mullis' interest in the Smartrac MEP. Specifically, Mr. Mullis wanted to confirm the

value of the sale of Neology and whether that value had been included in the fair market value determination for the Smartrac MEP. Mullis also wanted to confirm what value had been ascribed to Neology. (Exhibit 1).

207.   On September 20, 2017, Mr. Uhl stated that Mr. Mullis was not entitled to any money under the Smartrac MEP: "First of all, the deals are not comparable and I will not start doing so. Secondly, and I believe that Jörg has made this very transparent to you guys, SMARTRAC has significantly contributed to your new MEP as per an agreement between OEP and SMT. I thus believe that indeed I have paid a significant amount to you guys via this instrument. With respect to your further comments – you are exiting the company via a sale of the company. In doing so you are also exiting the MEP of SMARTRAC as a good leaver and you are treated as such. Based on the documentation you have received at the time you have been included in the program the rules for exiting the program and the underlying calculation method are crystal clear – we (OEP and SMT) have simply followed these rules. I can understand that you are not happy with the result of such calculation but the result is the result. Given the fact that I have contributed to you guys personally in other ways (MEP contribution) I sincerely believe that you should not feel mistreated." (Exhibit 1).

208.   The statements made in the September 20, 2017 email described above were false as Mr. Mullis's investment in Smartrac MEP had a value greater than $0 and Neology had been artificially devalued in order to avoid paying Mr. Mullis just compensation for his investment in the Smartrac MEP.

209.   Smartrac knew that the statements made in the September 19 and September 20 emails were false.

210.   Smartrac made the statements in the September 19 and September 20 emails with the intent to defraud Mr. Mullis.

211.   Mr. Mullis was justified in relying on the false representations by Smartrac as Smartrac was the plan administrator for the Smartrac MEP.

212.   Mr. Mullis suffered damages as a result of his reliance on Smartrac's misrepresentations in the form of the loss of value of his interest in the Smartrac MEP.

213.   Defendant Avery is responsible for Smartrac's actions because Avery acquired Smartrac in March 2020.

214.   Defendants Neology and Mr. Velasco knew that the September 19, 2017 email from Mr. Meurers to Mr. Mullis artificially devalued Neology.

215.   Defendants Neology and Mr. Velasco lent credence to the false valuation for Neology by failing to disclose the inaccuracies of the valuation and by assisting with and concealing efforts to devalue Neology.

216.   Mr. Mullis relied on Defendants Neology and Mr. Velasco lending credence to the false valuation for Neology by failing to disclose the inaccuracies of the valuation and by assisting with and concealing efforts to devalue Neology.

217.   Defendants Neology and Mr. Velasco were Mr. Mullis' employers and he had a right to rely on their representations.

218.   As a result of Mr. Mullis' reliance on Defendants Neology and Mr. Velasco, Mr. Mullis suffered damages in the form of the loss of value of his interest in the Smartrac MEP.

219.   Defendants J.P. Morgan and Mr. Smith fraudulently misrepresented to Mr. Mullis that they would assist with gathering documents related to the Smartrac MEP when they had no intention of doing so.

220.   Mr. Mullis justifiably relied on Defendants J.P. Morgan and Mr. Smith's misrepresentation based on their statements and long-standing business relationship.

221.   As a result of Defendants J.P. Morgan and Mr. Smith's misrepresentation, Mr. Mullis suffered damages in the form of the loss of the true value of his interest in the Smartrac MEP.

222.   Defendants J.P. Morgan and Mr. Smith conspired with Defendants Avery, Neology, and Mr. Velasco to fraudulently misrepresent to Mr. Mullis that his interest in the Smartrac MEP had zero value.

223.   Defendants conspired to fraudulently misrepresent to Mr. Mullis that his interest in the Smartrac MEP had zero value in order to avoid paying Mr. Mullis the funds he was entitled to based on his interest in the Smartrac MEP.

224.   The statute of limitations for Mr. Mullis' fraudulent misrepresentation claim should be tolled because Mr. Mullis was unable to know he had a fraudulent misrepresentation claim against Defendants since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner and did not know about Defendants' fraudulent misrepresentation until September 2022 at the earliest.

225.   The statute of limitations for Mr. Mullis' fraudulent misrepresentation claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

226.   The statute of limitations for Mr. Mullis' fraudulent misrepresentation claim should also be tolled because Mr. Mullis will have provided notice to Defendants in a timely manner, Defendants are not prejudiced by the timing of Mr. Mullis' fraudulent misrepresentation claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants.

227.   As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

228.   Mullis is informed and believes, and therefore alleges, that Defendants acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for Mullis's rights.  Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

## TWELFTH CAUSE OF ACTION

**(Aiding and Abetting Fraudulent Misrepresentation – Against Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco)**

229.   Mullis incorporates the allegations of paragraphs 1 through 228 above as if set forth fully herein.

230.   As set forth in paragraphs 203 through 213 above, Smartrac fraudulently misrepresented to Mr. Mullis that the value of Mr. Mullis' interest in the Smartrac MEP was $0.

231.   Defendants J.P. Morgan and Mr. Smith had actual knowledge that Smartrac fraudulently misrepresented to Mr. Mullis that the value of Mr. Mullis' interest in the Smartrac MEP was $0.

232.   Defendants J.P. Morgan and Mr. Smith provided substantial assistance to Smartrac's fraudulent misrepresentation to Mr. Mullis that the value of Mr. Mullis' interest in the Smartrac MEP was $0 through oversight of Smartrac's supervisory board.

233.   Defendants J.P. Morgan and Mr. Smith provided substantial assistance to Smartrac's fraudulent misrepresentation by agreeing to assist Mr. Mullis with obtaining information relevant to the fraud knowing they would fail to deliver on that promise.

234.   Defendants Neology and Mr. Velasco had actual knowledge that Smartrac fraudulently misrepresented to Mr. Mullis that his interest in the Smartrac MEP had zero value.

235.    Defendants Neology and Mr. Velasco provided substantial assistance to Smartrac Smartrac's fraudulent misrepresentation by assisting with and concealing the devaluation of Neology for the purposes of preventing Mr. Mullis from obtaining adequate compensation for his shares in the Smartrac MEP.

236.   The statute of limitations for Mr. Mullis' aiding and abetting fraudulent misrepresentation claim should be tolled because Mr. Mullis was unable to know he had an aiding and abetting fraudulent misrepresentation claim against Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner and did not know about

Defendant J.P. Morgan, Mr. Smith, Neology and Mr. Velasco's aiding and abetting fraudulent misrepresentation until September 2022 at the earliest.

237.   The statute of limitations for Mr. Mullis' aiding and abetting fraudulent misrepresentation claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

238.   The statute of limitations for Mr. Mullis' aiding and abetting fraudulent misrepresentation claim should also be tolled because Mr. Mullis will have provided notice to Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco in a timely manner, Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco are not prejudiced by the timing of Mr. Mullis' aiding and abetting fraudulent misrepresentation claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco.

239.   As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

240.   Mullis is informed and believes, and therefore alleges, that Defendants J.P. Morgan, Mr. Smith, Neology, and Mr. Velasco acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for Mullis's rights.  Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

## THIRTEENTH CAUSE OF ACTION

### (Fraudulent Inducement of Smartrac MEP release– Against All Defendants)

241.   Mullis incorporates the allegations of paragraphs 1 through 240 above as if set forth fully herein.

242.   On September 19, 2017, Mr. Meurers informed Mr. Mullis by email that his investment in the Smartrac MEP had a value of $0: "Following your exit from the Smartrac MEP we wanted to inform you of the exit calculation of your €50,000 investment. Pursuant to the signed agreement, Smartrac's LTM (latest twelve months) adjusted EBITDA is multiplied by the factor of 8x to arrive at Enterprise Value (EV).

As you can see in the attachment, LTM Jun-17A PF adjusted EBITDA was €174k which yields an EV of €1.4mm. Adding net cash of €54.6mm gives a Total Equity Value of €55.9mm. However, since Preferred Equity has accrued up to €97.7mm as per 30/6/2017, the value of Common Equity is negative at (€41.8mm) and hence the MEP vehicle at (€3.3mm). Therefore, you will be paid back the original cost of your investment less any applicable loan to the extent taken out by you to finance the investment." (Exhibit 1).

243. Defendant Mr. Velasco and Mr. Zirener were copied on the email and took part in the calculations leading to the conclusion that Mr. Mullis's investment in Smartrac MEP had a value of $0. (Exhibit 1).

244. The statements made in the September 19, 2017 email described above were false as Mr. Mullis's investment in Smartrac MEP had a value greater than $0 and Neology had been artificially devalued in order to avoid paying Mr. Mullis just compensation for his investment in the Smartrac MEP.

245. Smartrac knew that the statements made in the September 19, 2017 email were false.

246. In response, Mullis first asked Mr. Meurers and then Christian Uhl—CEO of Smartrac—for additional information regarding the basis for the valuation of Mullis' interest in the Smartrac MEP. Specifically, Mr. Mullis wanted to confirm the value of the sale of Neology and whether that value had been included in the fair market value determination for the Smartrac MEP. Mullis also wanted to confirm what value had been ascribed to Neology. (Exhibit 1).

247. On September 20, 2017, Mr. Uhl stated that Mr. Mullis was not entitled to any money under the Smartrac MEP: "First of all, the deals are not comparable and I will not start doing so. Secondly, and I believe that Jörg has made this very transparent to you guys, SMARTRAC has significantly contributed to your new MEP as per an agreement between OEP and SMT. I thus believe that indeed I have paid a significant amount to you guys via this instrument. With respect to your further comments – you

are exiting the company via a sale of the company. In doing so you are also exiting the MEP of SMARTRAC as a good leaver and you are treated as such. Based on the documentation you have received at the time you have been included in the program the rules for exiting the program and the underlying calculation method are crystal clear – we (OEP and SMT) have simply followed these rules. I can understand that you are not happy with the result of such calculation but the result is the result. Given the fact that I have contributed to you guys personally in other ways (MEP contribution) I sincerely believe that you should not feel mistreated." (Exhibit 1).

248. The statements made in the September 20, 2017 email described above were false as Mr. Mullis's investment in Smartrac MEP had a value greater than $0 and Neology had been artificially devalued in order to avoid paying Mr. Mullis just compensation for his investment in the Smartrac MEP.

249. Smartrac knew that the statements made in the September 20, 2017 email were false.

250. Smartrac made the false statements in the September 19, 2017 and September 20, 2017 emails in order to induce Mr. Mullis to rely on the statements and sign a release of his interest in the Smartrac MEP.

251. Mr. Mullis had a right to rely on the false statements by Smartrac because Smartrac was the plan administrator for the Smartrac MEP.

252. As a result of Mr. Mullis' reliance on Smartrac's false statements, Mr. Mullis suffered damages in the form of loss of the true value of his interest in the Smartrac MEP.

253. Defendant Avery is responsible for Smartrac's actions because Avery acquired Smartrac in March 2020.

254. Defendants Neology and Mr. Velasco knew that the September 19, 2017 email from Mr. Meurers to Mr. Mullis artificially devalued Neology and that Smartrac intended to induce Mr. Mullis to sign the release of his interest in the Smartrac MEP.

255.   Defendants Neology and Mr. Velasco lent credence to the false valuation for Neology by failing to disclose the inaccuracies of the valuation and by assisting with and concealing efforts to devalue Neology.

256.   Mr. Mullis relied on Defendants Neology and Mr. Velasco lending credence to the false valuation for Neology by failing to disclose the inaccuracies of the valuation and by assisting with and concealing efforts to devalue Neology.

257.   Defendants Neology and Mr. Velasco were Mr. Mullis' employers and he had a right to rely on their representations.

258.   As a result of Mr. Mullis' reliance on Defendants Neology and Mr. Velasco, Mr. Mullis released his interest in the Smartrac MEP and Mr. Mullis suffered damages in the form of the loss of value of his interest in the Smartrac MEP.

259.   Defendants J.P. Morgan and Mr. Smith fraudulently induced Mr. Mullis to delay pursuing his claims based on the Smartrac MEP by claiming that they would assist with gathering documents related to the Smartrac MEP when they had no intention of doing so.

260.   Mr. Mullis justifiably relied on Defendants J.P. Morgan and Mr. Smith's misrepresentation based on their statements and long-standing business relationship.

261.   As a result of Defendants J.P. Morgan and Mr. Smith's misrepresentation, Mr. Mullis suffered damages in the form of the loss of the true value of his interest in the Smartrac MEP.

262.   Defendants J.P. Morgan and Mr. Smith conspired with Defendants Avery, Neology, and Mr. Velasco to fraudulently induce Mr. Mullis to sign away his interest in the Smartrac MEP.

263.   Defendants conspired to fraudulently induce to Mr. Mullis to release his interest in the Smartrac MEP by representing that his interest in the Smartrac MEP had zero value in order to avoid paying Mr. Mullis the funds he was entitled to based on his interest in the Smartrac MEP.

264.   The statute of limitations for Mr. Mullis' fraudulent inducement claim should be tolled because Mr. Mullis was unable to know he had a fraudulent inducement claim against Defendants since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner and did not know about Defendants' fraudulent inducement until September 2022 at the earliest.

265.   The statute of limitations for Mr. Mullis' fraudulent inducement claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

266.   The statute of limitations for Mr. Mullis' fraudulent inducement claim should also be tolled because Mr. Mullis will have provided notice to Defendants in a timely manner, Defendants are not prejudiced by the timing of Mr. Mullis' fraudulent inducement claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants.

267.   As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

268.   Mullis is informed and believes, and therefore alleges, that Defendants acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for Mullis's rights.  Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

## **FOURTEENTH CAUSE OF ACTION**

**(Aiding and Abetting Fraudulent Inducement of Smartrac MEP release– Against Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco)**

269.   Mullis incorporates the allegations of paragraphs 1 through 268 above as if set forth fully herein.

270.   As set forth in paragraphs 242 through 253 above, Smartrac fraudulently induced Mr. Mullis to release his interest in the Smartrac MEP based on the misrepresentation that his interest had zero value.

271.   Defendants J.P. Morgan and Mr. Smith had actual knowledge that Smartrac fraudulently induced Mr. Mullis to release his interest in the Smartrac MEP.

272.   Defendants J.P. Morgan and Mr. Smith provided substantial assistance to Smartrac's fraudulent inducement of Mr. Mullis through oversight of Smartrac's supervisory board.

273.   Defendants J.P. Morgan and Mr. Smith provided substantial assistance to Smartrac's fraudulent inducement by agreeing to assist Mr. Mullis with obtaining information relevant to the fraud knowing they would fail to deliver on that promise.

274.   Defendants Neology and Mr. Velasco had actual knowledge that Smartrac fraudulently induced Mr. Mullis to release his interest in the Smartrac MEP.

275.    Defendants Neology and Mr. Velasco provided substantial assistance to Smartrac Smartrac's fraudulent inducement by assisting with and concealing the devaluation of Neology for the purposes of preventing Mr. Mullis from obtaining adequate compensation for his shares in the Smartrac MEP.

276.   The statute of limitations for Mr. Mullis' aiding and abetting fraudulent inducement claim should be tolled because Mr. Mullis was unable to know he had an aiding and abetting fraudulent inducement claim against Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner and did not know about Defendant J.P. Morgan, Mr. Smith, Neology and Mr. Velasco's aiding and abetting fraudulent inducement until September 2022 at the earliest.

277.   The statute of limitations for Mr. Mullis' aiding and abetting fraudulent inducement claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

278.   The statute of limitations for Mr. Mullis' aiding and abetting fraudulent inducement claim should also be tolled because Mr. Mullis will have provided notice to Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco in a timely manner,

1    Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco are not prejudiced by

2    the timing of Mr. Mullis' aiding and abetting fraudulent inducement claim, and Mr.

3    Mullis acted in good faith and reasonable conduct in filing the claim against

4    Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco.

5         279.   As a direct and proximate result of the acts described herein, Plaintiff was

6    damaged in an amount to be proven at trial.

7         280.   Mullis is informed and believes, and therefore alleges, that Defendants

8    J.P. Morgan, Mr. Smith, Neology, and Mr. Velasco acted with malice, oppression, and

9    fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for

10   Mullis's rights.  Accordingly, an award of punitive damages is justified in an amount

11   according to proof at trial.

12                       **FIFTEENTH CAUSE OF ACTION**

13               **(Fraudulent Concealment – Against All Defendants)**

14        281.   Mullis incorporates the allegations of paragraphs 1 through 280 above as

15   if set forth fully herein.

16        282.   On September 19, 2017, Mr. Meurers informed Mr. Mullis by email that

17   his investment in the Smartrac MEP had a value of $0: "Following your exit from the

18   Smartrac MEP we wanted to inform you of the exit calculation of your €50,000

19   investment. Pursuant to the signed agreement, Smartrac's LTM (latest twelve months)

20   adjusted EBITDA is multiplied by the factor of 8x to arrive at Enterprise Value (EV).

21   As you can see in the attachment, LTM Jun-17A PF adjusted EBITDA was €174k

22   which yields an EV of €1.4mm. Adding net cash of €54.6mm gives a Total Equity

23   Value of €55.9mm. However, since Preferred Equity has accrued up to €97.7mm as

24   per 30/6/2017, the value of Common Equity is negative at (€41.8mm) and hence the

25   MEP vehicle at (€3.3mm). Therefore, you will be paid back the original cost of your

26   investment less any applicable loan to the extent taken out by you to finance the

27   investment." (Exhibit 1).

28

283.   Defendant Mr. Velasco and Mr. Zirener were copied on the email and took part in the calculations leading to the conclusion that Mr. Mullis's investment in Smartrac MEP had a value of $0. (Exhibit 1).

284.   The statements made in the September 19, 2017 email described above were false as Mr. Mullis's investment in Smartrac MEP had a value greater than $0 and Neology had been artificially devalued in order to avoid paying Mr. Mullis just compensation for his investment in the Smartrac MEP.

285.   Smartrac concealed from Mr. Mullis the true value of Neology, which it could have revealed in the September 19, 2017 email.

286.   In response, Mullis first asked Mr. Meurers and then Christian Uhl—CEO of Smartrac—for additional information regarding the basis for the valuation of Mullis' interest in the Smartrac MEP. Specifically, Mr. Mullis wanted to confirm the value of the sale of Neology and whether that value had been included in the fair market value determination for the Smartrac MEP. Mullis also wanted to confirm what value had been ascribed to Neology. (Exhibit 1).

287.   On September 20, 2017, Mr. Uhl stated that Mr. Mullis was not entitled to any money under the Smartrac MEP: "First of all, the deals are not comparable and I will not start doing so. Secondly, and I believe that Jörg has made this very transparent to you guys, SMARTRAC has significantly contributed to your new MEP as per an agreement between OEP and SMT. I thus believe that indeed I have paid a significant amount to you guys via this instrument. With respect to your further comments – you are exiting the company via a sale of the company. In doing so you are also exiting the MEP of SMARTRAC as a good leaver and you are treated as such. Based on the documentation you have received at the time you have been included in the program the rules for exiting the program and the underlying calculation method are crystal clear – we (OEP and SMT) have simply followed these rules. I can understand that you are not happy with the result of such calculation but the result is the result. Given the

fact that I have contributed to you guys personally in other ways (MEP contribution) I sincerely believe that you should not feel mistreated." (Exhibit 1).

288.   The statements made in the September 20, 2017 email described above were false as Mr. Mullis's investment in Smartrac MEP had a value greater than $0 and Neology had been artificially devalued in order to avoid paying Mr. Mullis just compensation for his investment in the Smartrac MEP.

289.   Smartrac concealed from Mr. Mullis the true value of Neology, which it could have revealed in the September 20, 2017 email.

290.   Smartrac knew that the statements made in the September 19 and September 20 emails were false and concealed from Mr. Mullis the true value of Neology.

291.   Smartrac, as plan administrator of the Smartrac MEP, had a duty to disclose the true value of Neology to Mr. Mullis

292.   Smartrac made the statements in the September 19 and September 20, 2017 emails with the intent to defraud Mr. Mullis.

293.   Mr. Mullis was unaware of the true value of Neology and would not have released his claim in the Smartrac MEP had he known the true value of Neology.

294.   Mr. Mullis suffered damages as a result of Smartrac's concealment in the form of the loss of value of his interest in the Smartrac MEP.

295.   Defendant Avery is responsible for Smartrac's actions because Avery acquired Smartrac in March 2020.

296.   Defendants Neology and Mr. Velasco knew that the September 19, 2017 email from Mr. Meurers to Mr. Mullis concealed the true value of Neology.

297.   Defendants Neology and Mr. Velasco lent credence to the false valuation for Neology by failing to disclose the inaccuracies of the valuation and by assisting with and concealing efforts to devalue Neology.

298.   Mr. Mullis relied on Defendants Neology and Mr. Velasco lending credence to the false valuation for Neology by failing to disclose the inaccuracies of the valuation and by assisting with and concealing efforts to devalue Neology.

299.   Defendants Neology and Mr. Velasco were Mr. Mullis' employers and owed Mr. Mullis a duty to disclose the true value of Neology, which Defendants Neology and Mr. Velasco could have done in response to the September 19, 2017 email.

300.   Mr. Mullis suffered damages as a result of Defendants Neology and Mr. Velasco's concealment in the form of the loss of value of his interest in the Smartrac MEP.

301.   Defendants J.P. Morgan and Mr. Smith concealed documents from Mr. Mullis demonstrating the true value of Neology and his interest in the Smartrac MEP.

302.   Defendants J.P. Morgan and Mr. Smith had a duty to provide the documents Mr. Mullis requested because Defendants J.P. Morgan and Mr. Smith represented that they would provide the documents and at no time indicated that they would refuse to do so.

303.   Mr. Mullis justifiably relied on Defendants J.P. Morgan and Mr. Smith's representation that they would provide the documents based on their statements and long-standing business relationship.

304.   As a result of Defendants J.P. Morgan and Mr. Smith's concealment of the true value of Neology and his interest in the Smartrac MEP, Mr. Mullis suffered damages in the form of the loss of the true value of his interest in the Smartrac MEP.

305.   Defendants J.P. Morgan and Mr. Smith conspired with Defendants Avery, Neology, and Mr. Velasco to fraudulently conceal from Mr. Mullis the true value of his interest in the Smartrac MEP.

306.   Defendants conspired to fraudulently conceal from Mr. Mullis the true value of his interest in the Smartrac MEP in order to avoid paying Mr. Mullis the funds he was entitled to based on his interest in the Smartrac MEP.

307.   The statute of limitations for Mr. Mullis' fraudulent concealment claim should be tolled because Mr. Mullis was unable to know he had a fraudulent concealment claim against Defendants since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner.

308.   The statute of limitations for Mr. Mullis' fraudulent concealment claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

309.   The statute of limitations for Mr. Mullis' fraudulent concealment claim should also be tolled because Mr. Mullis will have provided notice to Defendants in a timely manner, Defendants are not prejudiced by the timing of Mr. Mullis' fraudulent concealment claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants and did not know about Defendants' fraudulent concealment until September 2022 at the earliest.

310.   As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

311.   Mullis is informed and believes, and therefore alleges, that Defendants acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for Mullis's rights. Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

## SIXTEENTH CAUSE OF ACTION

### (Aiding and Abetting Fraudulent Concealment – Against Defendants J.P. Morgan, Mr. Smith, Neology, and Mr. Velasco)

312.   Mullis incorporates the allegations of Paragraphs 1 through 311 above as if set forth fully herein.

313.   As set forth in paragraphs 282 through 295 above, Smartrac fraudulently concealed from Mr. Mullis the true value of Neology and his interest in the Smartrac MEP.

314.   Defendants J.P. Morgan and Mr. Smith had actual knowledge that Smartrac fraudulently concealed from Mr. Mullis true value of neology and his interest in the Smartrac MEP.

315.   Defendants J.P. Morgan and Mr. Smith provided substantial assistance to Smartrac's fraudulent concealment of Mr. Mullis through oversight of Smartrac's supervisory board.

316.   Defendants J.P. Morgan and Mr. Smith provided substantial assistance to Smartrac's fraudulent concealment by agreeing to assist Mr. Mullis with obtaining information relevant to the true value of Neology and his interest in the Smartrac MEP but knowing they would fail to deliver on that promise.

317.   Defendants Neology and Mr. Velasco had actual knowledge that Smartrac fraudulently concealed the true value of Neology and his interest in the Smartrac MEP.

318.   Defendants Neology and Mr. Velasco provided substantial assistance to Smartrac Smartrac's fraudulent concealment by assisting with and concealing the devaluation of Neology for the purposes of preventing Mr. Mullis from obtaining adequate compensation for his shares in the Smartrac MEP.

319.   The statute of limitations for Mr. Mullis' aiding and abetting fraudulent concealment claim should be tolled because Mr. Mullis was unable to know he had an aiding and abetting fraudulent concealment claim against Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner and did not know about Defendant J.P. Morgan, Mr. Smith, Neology and Mr. Velasco's aiding and abetting fraudulent concealment until September 2022 at the earliest.

320.   The statute of limitations for Mr. Mullis' aiding and abetting fraudulent concealment claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

321.   The statute of limitations for Mr. Mullis' aiding and abetting fraudulent concealment claim should also be tolled because Mr. Mullis will have provided notice to Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco in a timely manner, Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco are not prejudiced by the timing of Mr. Mullis' aiding and abetting fraudulent concealment claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants J.P. Morgan, Mr. Smith, Neology and Mr. Velasco.

322.   As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

323.   Mullis is informed and believes, and therefore alleges, that Defendants J.P. Morgan, Mr. Smith, Neology, and Mr. Velasco acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for Mullis's rights.  Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

### SEVENTEENTH CAUSE OF ACTION

### (Negligent Misrepresentation – Against Defendant Avery)

324.   Mullis incorporates the allegations of paragraphs 1 through 323 above as if set forth fully herein.

325.   Smartrac, as Mr. Mullis' employer and plan administrator for the Smartrac MEP, owed Mr. Mullis a duty of care to make certain he was treated fairly with respect to the Smartrac MEP.

326.   On September 19, 2017, Mr. Meurers informed Mr. Mullis by email that his investment in the Smartrac MEP had a value of $0: "Following your exit from the Smartrac MEP we wanted to inform you of the exit calculation of your €50,000 investment. Pursuant to the signed agreement, Smartrac's LTM (latest twelve months) adjusted EBITDA is multiplied by the factor of 8x to arrive at Enterprise Value (EV). As you can see in the attachment, LTM Jun-17A PF adjusted EBITDA was €174k which yields an EV of €1.4mm. Adding net cash of €54.6mm gives a Total Equity

Value of €55.9mm. However, since Preferred Equity has accrued up to €97.7mm as per 30/6/2017, the value of Common Equity is negative at (€41.8mm) and hence the MEP vehicle at (€3.3mm). Therefore, you will be paid back the original cost of your investment less any applicable loan to the extent taken out by you to finance the investment." (Exhibit 1).

327.   The statements made in the September 19, 2017 email described above were false as Mr. Mullis's investment in Smartrac MEP had a value greater than $0.

328.   In response, Mullis first asked Mr. Meurers and then Christian Uhl—CEO of Smartrac—for additional information regarding the basis for the valuation of Mullis' interest in the Smartrac MEP. Specifically, Mr. Mullis wanted to confirm the value of the sale of Neology and whether that value had been included in the fair market value determination for the Smartrac MEP. Mullis also wanted to confirm what value had been ascribed to Neology. (Exhibit 1).

329.   On September 20, 2017, Mr. Uhl stated that Mr. Mullis was not entitled to any money under the Smartrac MEP: "First of all, the deals are not comparable and I will not start doing so. Secondly, and I believe that Jörg has made this very transparent to you guys, SMARTRAC has significantly contributed to your new MEP as per an agreement between OEP and SMT. I thus believe that indeed I have paid a significant amount to you guys via this instrument. With respect to your further comments – you are exiting the company via a sale of the company. In doing so you are also exiting the MEP of SMARTRAC as a good leaver and you are treated as such. Based on the documentation you have received at the time you have been included in the program the rules for exiting the program and the underlying calculation method are crystal clear – we (OEP and SMT) have simply followed these rules. I can understand that you are not happy with the result of such calculation but the result is the result. Given the fact that I have contributed to you guys personally in other ways (MEP contribution) I sincerely believe that you should not feel mistreated." (Exhibit 1).

330.   The statements made in the September 20, 2017 email described above were false as Mr. Mullis's investment in Smartrac MEP had a value greater than $0.

331.   Smartrac did not have reasonable grounds to make the representations to Mr. Mullis regarding the value of his interest the Smartrac MEP.

332.   Mr. Mullis relied on Smartrac's misrepresentations and was justified in doing so since Smartrac was the plan administrator of the Smartrac MEP and Mr. Mullis' employer.

333.   As a result of Smartrac's misrepresentations, Mr. Mullis suffered damages in the form of the loss of the true value of his interest in the Smartrac MEP.

334.   Defendant Avery is responsible for Smartrac's actions because Avery acquired Smartrac in March 2020.

335.   The statute of limitations for Mr. Mullis' negligent misrepresentation claim should be tolled because Mr. Mullis was unable to know he had a negligent misrepresentation claim against Defendant Avery since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such information in a timely manner and did not know about Defendant Avery's negligent misrepresentation until September 2022 at the earliest.

336.   The statute of limitations for Mr. Mullis' negligent misrepresentation claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

337.   The statute of limitations for Mr. Mullis' negligent misrepresentation claim should also be tolled because Mr. Mullis will have provided notice to Defendant Avery in a timely manner, Defendant Avery is not prejudiced by the timing of Mr. Mullis' negligent misrepresentation claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendant Avery.

338.   As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

339.   Mr. Mullis is informed and believes, and therefore alleges, that Defendant Avery acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for Mullis's rights.  Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

## **EIGHTEENTH CAUSE OF ACTION**

### **(Constructive Fraud – Against All Defendants)**

340.   Mullis incorporates the allegations of Paragraphs 1 through 339 above as if set forth fully herein.

341.   Smartrac, as Mr. Mullis' employer, owed him a duty of care to make certain he was treated fairly with respect to the Smartrac MEP.

342.   Smartrac breached its duty to Mr. Mullis by failing to make certain that the Smartrac MEP was administered properly.

343.   As a result of Smartrac's failure to make certain the Smartrac MEP was administered fairly, Smartrac gained financially because it did not have to pay Mr. Mullis the fair value of his interest in the Smartrac MEP.

344.   As a result of Smartrac's failure to make certain the Smartrac MEP was administered fairly, Mr. Mullis suffered damages in the form of the loss of the true value of his interest in the Smartrac MEP.

345.   Defendant Avery is responsible for Smartrac's actions because Avery acquired Smartrac in March 2020.

346.   Mr. Smith, as Chairman of the Supervisory Board of Smartrac, owed Mr. Mullis a duty of care to make certain the Smartrac MEP was administered properly.

347.   Mr. Smith breached his duty by failing to detect and intervene when Mr. Mullis was informed that his interest in the Smartrac MEP was worth $0.

348.   As a result of Mr. Smith's failure to detect intervene, Mr. Mullis suffered damages in the form of loss of the true value of his interest in the Smartrac MEP.

349.   Mr. Smith was at all times an employee of J.P. Morgan while he served as Chairman of the Supervisory Board of Smartrac.

350.   Mr. Smith served as the Chairman of the Supervisory Board of Smartrac in order to protect the interest of J.P. Morgan in Smartrac.

351.   J.P. Morgan owed Mr. Mullis a duty of care to make certain he was treated fairly with respect to the Smartrac MEP.

352.   J.P. Morgan breached its duty to Mr. Mullis by failing to make certain that the Smartrac MEP was administered properly.

353.   As a result of J.P. Morgan's failure to properly monitor the Smartrac MEP, Mr. Mullis suffered damages in the form of the loss of the true value of his interest in the Smartrac MEP.

354.   Neology, as Mr. Mullis' direct employer, owed him a duty of care to make certain he was treated fairly with respect to the Smartrac MEP.

355.   Neology breached its duty to Mr. Mullis by failing to make certain that the Smartrac MEP was administered properly.

356.   As a result of Neology's failure to make certain the Smartrac MEP was administered fairly, Mr. Mullis suffered damages in the form of the loss of the true value of his interest in the Smartrac MEP.

357.   Mr. Velasco, as CEO of Neology, owed Mr. Mullis a duty of care to make certain he was treated fairly with respect to the Smartrac MEP.

358.   Mr. Velasco breached his duty to Mr. Mullis by failing to make certain that the Smartrac MEP was administered properly.

359.   As a result of Mr. Velasco's failure to make certain the Smartrac MEP was administered fairly, Mr. Mullis suffered damages in the form of the loss of the true value of his interest in the Smartrac MEP.

360.   The statute of limitations for Mr. Mullis' constructive fraud should be tolled because Mr. Mullis was unable to know he had a constructive fraud claim against Defendants since Mr. Mullis did not have the relevant information regarding calculation of his share in the Smartrac MEP despite having requested such

information in a timely manner and did not know about Defendants' constructive fraud until September 2022 at the earliest.

361.   The statute of limitations for Mr. Mullis' constructive fraud claim should also be tolled because Mr. Mullis was forced to end his inquiry regarding the Smartrac MEP under duress for fear he would lose his job.

362.   The statute of limitations for Mr. Mullis' constructive fraud should also be tolled because Mr. Mullis will have provided notice to Defendants in a timely manner, Defendants are not prejudiced by the timing of Mr. Mullis' constructive fraud claim, and Mr. Mullis acted in good faith and reasonable conduct in filing the claim against Defendants.

363.   As a direct and proximate result of the acts described herein, Plaintiff was damaged in an amount to be proven at trial.

364.   Mullis is informed and believes, and therefore alleges, that Defendants acted with malice, oppression, and fraud, and a deliberate intent to hurt and injure Mullis, or with conscious disregard for Mullis's rights. Accordingly, an award of punitive damages is justified in an amount according to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Mullis prays for judgment against Defendants as follows:

1.   For general, actual, and compensatory damages in an amount to be proven at trial;

2.   For pre- and post-judgment interest as permitted by law;

3.   For punitive damages as permitted by law;

4.   For reasonable attorneys' fees, litigation expenses, and costs as might be permitted by contract and/or applicable law;

5.   For any and all other relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Joseph N. Mullis hereby demands a trial by jury on all issues so triable.

Dated: January 26, 2024        */s/ Mane Sardaryan*
Paul B. Derby [SBN 211352]
pderby@skiermontderby.com
Mane Sardaryan [SBN 287201]
msardaryan@skiermontderby.com
**SKIERMONT DERBY LLP**
633 West Fifth Street, Suite 5800
Los Angeles, California 90071
Telephone:   (213) 788-4500
Facsimile:   (213) 788-4545

*Attorneys for Plaintiff*
JOSEPH N. MULLIS