Michael E. McCarthy (SBN 301010)
mccarthyme@gtlaw.com
Layal L. Bishara (SBN 329154)
bisharal@gtlaw.com
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel: (310) 586-7700
Fax: (310) 586-7800
Attorneys for Defendants
JPMORGAN CHASE & CO. and RICK SMITH

*Additional Defendants and Counsel on Signature Page*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH N. MULLIS, an individual, | CASE NO. 3:23-cv-02106-LAB-BGS |
| Plaintiff, | |
| vs. | Assigned to Hon. Larry Alan Burns, Courtroom 14A |
| J.P. MORGAN CHASE & CO., a Delaware corporation; RICK SMITH, an individual; NEOLOGY, INC., a Delaware corporation; FRANCISCO MARTINEZ DE VELASCO, an individual; AVERY DENNISON CORP., a Delaware corporation; and DOES 1 to 20, inclusive, | **DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |
| | [Filed concurrently with Declaration of Paul Ferak] |
| Defendants. | Hearing Date: April 8, 2024 |
| | Hearing Time: 11:30 a.m. |
| | Courtroom: 14A |
| | Action Filed: October 13, 2023 |
| | First Amended Complaint Filed: January 26, 2024 |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................1

II. RELEVANT BACKGROUND ................................................................3

III. LEGAL ARGUMENT.............................................................................5

    A.  Plaintiff Filed a Diversity-Destroying Amendment Without Leave of Court……………………………………………………………………5

    B.  The Amount Placed in Controversy by Plaintiff's Claims Exceeds $75,000………………………………………………………………9

    C.  Independent of Diversity, the Court Has Subject Matter Jurisdiction under the New York Convention……………………………………………..11

        1.  Plaintiff's Claims "Relate to" the Mullis/OEP Agreements.............13

        2.  The Mullis/OEP Agreements Fall Under the Convention.................14

        3.  Plaintiff Cannot Evade Arbitration by Suing Nonsignatories. .........15

        4.  Retaining Jurisdiction Under the Convention Promotes Efficiency. ........................................................................................17

IV. CONCLUSION......................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Shutterfly, Inc.*,
   2020 U.S. Dist. LEXIS 167910 (N.D. Cal. Sep. 14, 2020) ..........................17

*Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*,
   2023 U.S. Dist. LEXIS 227709 (C.D. Cal. Dec. 19, 2023) ...........14, 16, 17

*Baker v. Nutrien AG Sols., Inc.*,
   2022 U.S. Dist. LEXIS 140125 (E.D. Cal. Aug. 5, 2022)........................7, 8

*Balen v. Holland Am. Line, Inc.*,
   583 F.3d 647 (9th Cir. 2009) ...............................................................14

*Beiser v. Weyler*,
   284 F.3d 665 (5th Cir. 2002) ...............................................................12

*Borsack v. Chalk & Vermilion Fine Arts*,
   974 F. Supp. 293 (S.D.N.Y. 1997) .......................................................18

*Brown v. Ikon Office Solutions, Inc.*,
   2009 U.S. Dist. LEXIS 102486 (N.D. Cal. Nov. 4, 2009) .............................5

*Cavada v. Inter-Continental Hotels Grp., Inc.*,
   2019 U.S. Dist. LEXIS 190302 (S.D. Cal. Nov. 1, 2019)..............................1

*Chess v. CF Arcis IX LLC*,
   2020 U.S. Dist. LEXIS 129652 (N.D. Cal. July 22, 2020) ..........................10

*Chavez v. JPMorgan Chase & Co.*,
   888 F.3d 413 (9th Cir. 2018) ..............................................................2, 9

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*,
   109 F. Supp. 2d 1236 (S.D. Cal. 2000)..................................................12

*Cisneros v. Aurora Bank, FSB*,
   2012 U.S. Dist. LEXIS 198308 (C.D. Cal. Sep. 17, 2012) ........................5, 6

*Clinco v. Roberts*,
   41 F. Supp. 2d 1080 (C.D. Cal. 1999) .................................................1, 5

*Cohn v. Petsmart, Inc.*,
    281 F.3d 837 (9th Cir. 2002) ...................................................................11

*Collins v. San Diego Metro. Transit Sys.*,
    2013 U.S. Dist. LEXIS 160638 (S.D. Cal. Nov. 7, 2013)............................8

*Correa v. Ford Motor Co.*,
    2023 U.S. Dist. LEXIS 123618 (C.D. Cal. July 17, 2023)..........................11

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
    574 U.S. 81 (2014) .......................................................................................9

*Farzam v. Nat'l Registry of Emergency Med. Technicians*,
    2018 U.S. Dist. LEXIS 87993 (C.D. Cal. May 23, 2018) ........................1, 5

*Feder v. Mercedez-Benz United States, LLC*,
    2023 U.S. Dist. LEXIS 192479 (C.D. Cal. Oct. 24, 2023) ...........................9

*Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*,
    2020 U.S. Dist. LEXIS 158387 (N.D. Cal. Aug. 31, 2020) ........................15

*Francis v. Wyndham Vacation Resorts, Inc.*,
    2019 U.S. Dist. LEXIS 54647 (S.D. Cal. Mar. 29, 2019) .......................2, 10

*Fritsch v. Swift Transp.*,
    899 F.3d 785 (9th Cir. 2018) .....................................................................10

*GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*,
    140 S. Ct. 1637 (2020)................................................................................15

*Hopkins & Carley, ALC v. Thomson Elite*,
    2011 U.S. Dist. LEXIS 38396 (N.D. Cal. Apr. 6, 2011) .............................14

*Infuturia Global Ltd. v. Sequus Pharms., Inc.*,
    631 F.3d 1133 (9th Cir. 2011) ...................................................................12

*Ives v. Allstate Ins. Co.*,
    504 F. Supp. 3d 1095 (C.D. Cal. 2020) .................................................2, 11

*Jian-Ming Zhao v. RelayRides, Inc.*,
    2017 U.S. Dist. LEXIS 204415 (N.D. Cal. Dec. 12, 2017).........................11

*Lewis v. Verizon Commc'ns, Inc.*,
    627 F.3d 395 (9th Cir. 2010) .......................................................................9

*Mitchell v. Tillett*,
  2016 U.S. Dist. LEXIS 153686 (N.D. Cal. Oct. 28, 2016) ..........................14

*Mousebelt Labs Pte. LTD v. Armstrong*,
  2023 U.S. Dist. LEXIS 97679 (N.D. Cal. May 24, 2023)..................14, 15, 16, 17

*Mullen Techs., Inc. v. Qiantu Motor (Suzhou) Ltd.*,
  2020 U.S. Dist. LEXIS 116323 (S.D. Cal. July 1, 2020) ....................12, 14

*Nationwide Agribusiness Ins. Co. v. Buhler Barth GMBH*,
  2015 U.S. Dist. LEXIS 147717 (E.D. Cal. Oct. 29, 2015)..........................13

*Newson v. Allstate Ins. Co.*,
  2018 U.S. Dist. LEXIS 227054 (C.D. Cal. July 24, 2018)..........................10

*Palestini v. Gen. Dynamics Corp.*,
  193 F.R.D. 654 (S.D. Cal. 2000) ...........................................6

*Reed v. Corinthian Coll., Inc.*,
  2005 U.S. Dist. LEXIS 54961 (W.D. Wash. Dec. 6, 2005) ..........................18

*Richmond v. Allstate Ins. Co.*,
  897 F. Supp. 447 (S.D. Cal. 1995)...........................................2

*Roa v. TS Staffing Servs., Inc.*,
  2015 U.S. Dist. LEXIS 7442 (C.D. Cal. Jan. 22, 2015) ...........................9

*Ruff v. Wilson Logistics, Inc.*,
  2022 U.S. Dist. LEXIS 86544 (N.D. Cal. May 12, 2022)...........................9

*Saad Badrh v. Amazon.com Servs. LLC*,
  2023 U.S. Dist. LEXIS 151337 (C.D. Cal. Aug. 28, 2023) .......................7, 8

*Safari Club Int'l v. Rudolph*,
  2014 U.S. Dist. LEXIS 196110 (C.D. Cal. Jan. 16, 2014)..........................10

*Sanchez v. HVM/LQ Mgmt., LLC*,
  2011 U.S. Dist. LEXIS 165928 (C.D. Cal. Mar. 8, 2011)...........................2

*Sensor Dynamics AG Entwicklungs-Und Produktionsgesellschaft v. Memsco LLC*,
  2008 U.S. Dist. LEXIS 126616 (C.D. Cal. Oct. 10, 2008) ..........................15

*Setty v. Shrinivas Sugandhalaya LLP*,
  3 F.4th 1166 (9th Cir. 2021) ...........................................16

*Simmons v. PCR Tech.*,
    209 F. Supp. 2d 1029 (N.D. Cal. 2002)......................................................10

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ...............................................................13

*Sykes v. A. Duda & Sons, Inc.*,
    1991 U.S. App. LEXIS 18793 (9th Cir. Aug. 8, 1991) ...............................10

*Tech. & Intellectual Prop. Strategies Grp. Prof'l Corp. v. Insperity, Inc.*,
    2012 U.S. Dist. LEXIS 170714 (N.D. Cal. Nov. 29, 2012) .......................14

*Trajkovski Inv. AB v. I.Am.Plus Elecs., Inc.*,
    2021 U.S. Dist. LEXIS 247685 (C.D. Cal. Dec. 29, 2021) .......................14

*Twitch Interactive, Inc. v. Fishwoodco GmbH*,
    2023 U.S. Dist. LEXIS 94786 (N.D. Cal. May 31, 2023) .........................15

*United Ass'n Local Union No. 26 v. Big Rooter/Nelson Plumbing & Mech., Inc.*,
    2011 U.S. Dist. LEXIS 5922 (W.D. Wash. Jan. 14, 2011) .......................14

*Zapata Fonseca v. Vigo Importing Co.*,
    2016 U.S. Dist. LEXIS 148457 (N.D. Cal. Oct. 26, 2016) .......................11

**Statutes**

9 U.S.C. § 201 ...............................................................................................2

9 U.S.C. § 203 ...................................................................................3, 11, 15

9 U.S.C. § 205 ........................................................................................*passim*

28 U.S.C. § 1447(e) .......................................................................................5

Cal. Pen. Code § 496..........................................................................2, 4, 10, 13

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................................8

Fed. R. Civ. P. 15(a)(1).................................................................................1, 5

Fed. R. Civ. P. 19(a).......................................................................................6

Pursuant to the Court's Order (ECF No. 25), Defendants JPMorgan Chase & Co. ("JPMC"), Rick Smith, Neology, Inc. ("Neology"), Francisco Martinez De Velasco and Avery Dennison Corporation ("Avery Dennison") jointly oppose Plaintiff Joseph N. Mullis's Motion to Remand filed February 2, 2024 (ECF No. 15).

## I.  **INTRODUCTION**

Plaintiff filed this action in the Superior Court of California, County of San Diego, on October 13, 2023. His initial Complaint named one defendant, JPMC. (ECF No. 1, "Comp.".) JPMC removed the action to this Court on diversity grounds on November 16, 2023. (*Id.*) On January 26, 2024, without seeking leave to amend, Plaintiff filed his First Amended Complaint (ECF No. 9, "FAC") naming four additional defendants—Mr. Smith, Neology, Mr. Velasco and Avery Dennison. Plaintiff then moved to remand ("Motion"), arguing that the new Defendants (at least Neology) destroy diversity and there is less than $75,000 in controversy. Plaintiff's Motion fails and should be denied.

***First***, the Motion should be denied, and the FAC should be stricken, because Plaintiff did not seek or obtain leave to join any new Defendants. JPMC and Plaintiff are completely diverse. Post-removal amendments to a complaint that destroy diversity are not permitted as a matter of course; instead, a plaintiff must "seek leave to amend before joining diversity-destroying defendants following removal, even where the amendment is filed as a matter of right under Rule 15(a)(1)." *Farzam v. Nat'l Registry of Emergency Med. Technicians*, 2018 U.S. Dist. LEXIS 87993, at *5 (C.D. Cal. May 23, 2018) (citing *Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1088 (C.D. Cal. 1999) (striking amended complaint purporting to add diversity-destroying defendants and denying motion to remand)). Plaintiff did not obtain leave of Court before adding new parties to destroy diversity. Nor does the FAC meet the requirements for such a diversity-destroying amendment. (*See* Section III(A), *infra*.) For both reasons, the Motion fails.

***Second***, there is more than $75,000 in controversy in this action. A defendant may rely on the allegations in the complaint to establish the amount in controversy. *See Cavada v. Inter-Continental Hotels Grp., Inc.*, 2019 U.S. Dist. LEXIS 190302, at *5 (S.D. Cal.

Nov. 1, 2019) ("A removing defendant may rely on 'a chain of reasoning that includes assumptions' and 'an assumption may be reasonable if it is founded on the allegations of the complaint.'") (citation omitted); *Sanchez v. HVM/LQ Mgmt., LLC*, 2011 U.S. Dist. LEXIS 165928, *9 (C.D. Cal. Mar. 8, 2011) ("Defendant is entitled to calculate the amount in controversy based on the allegations in the [complaint].")). Plaintiff alleges that he held a €50,000 investment tied to the value of Neology, a global mobility company where he was employed. He alleges that he was fraudulently induced to release his €50,000 investment for nothing, and that he is entitled to treble damages under California Penal Code § 496(c). (*See* Comp. ¶¶ 18, 26, 52-53).[1] *See, e.g.*, *Francis v. Wyndham Vacation Resorts, Inc.*, 2019 U.S. Dist. LEXIS 54647, at *3-4 (S.D. Cal. Mar. 29, 2019) (denying remand because "Plaintiffs allege that the total purchase price was $51,202 and seek treble damages").[2] Plaintiff also seeks punitive damages, as well as recovery of attorneys' fees. *See, e.g.*, *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449-50 (S.D. Cal. 1995) ("The amount in controversy may also include punitive damages . . . and attorney fees if recoverable by statute or contract."). Taken together, Plaintiff's express claims seek more than $75,000. (*See* Section III(B), *infra*.)[3]

**Three**, independent of diversity, the Court has subject matter jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (commonly known as the "New York Convention" or "Convention"), June 7, 1959, 21 U.S.T. 2517. *See* 9 U.S.C. § 201. As explained below and in JPMC's motion to compel arbitration filed

---

[1] Because "the amount in controversy is determined by the complaint operative at the time of removal," we cite to the initial Complaint for issues related to the amount in controversy. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-415 (9th Cir. 2018).

[2] Although the initial Complaint states that Plaintiff's investment was $50,000, Plaintiff clarifies in his Motion that the investment was indeed €50,000. (Mot. at p. 6 n.1.)

[3] In addition, following removal, Plaintiff made a monetary demand to JPMC for $1,900,000. *See Ives v. Allstate Ins. Co.*, 504 F. Supp. 3d 1095, 1097-98 (C.D. Cal. 2020) (holding that plaintiff's settlement demands, "including *after* Defendant removed the case" established the requisite amount in controversy) (emphasis in original).

in response to the initial Complaint (ECF No. 5), Plaintiff's claims are covered by arbitration agreements governed by the Convention. (*See* Section III(C), *infra*.) "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203. Thus, if this action is remanded (it should not be), JPMC intends to remove again based on the jurisdiction provided by the New York Convention. 9 U.S.C. § 205 (removal under the Convention is permitted "at any time before the trial").

In addition, none of the new Defendants had an opportunity to assert federal subject matter jurisdiction previously, and if this action is remanded (again, it should not be), they could simply remove the action under the Convention. *See id.* Thus, diversity aside, the Court should maintain jurisdiction over this action to promote judicial economy and avoid successive removals.

## II. <u>RELEVANT BACKGROUND</u>

According to the Complaint, in or around December 2010, OEP Technologie B.V. ("OEP Technologie") acquired a majority interest in Smartrac N.V. ("Smartrac"). (*See* Comp. ¶ 10.) The following year, Smartrac acquired a majority interest in Neology, where Plaintiff had worked since 2003. (*Id.* ¶¶ 9, 11.) As part of his employment with Neology, Plaintiff was "offered a stake" in OEP Technologie and its subsidiaries, including Smartrac. (*Id*. ¶ 14.) Plaintiff claimed that he made a "[€]50,000 loaned investment" in a "Smartrac Management Equity Program" ("Smartrac MEP"). (*See id.* ¶¶ 12-14, 18.)

What Plaintiff refers to as the "Smartrac MEP" was actually OEP Technologie Beteiligungs GbR ("OEP GbR"), a civil law partnership organized under the laws of Germany. (*See* ECF No. 5-1, Declaration of Rob Harmzen ("Harmzen Decl.") ¶¶ 7-10, Exs. 1-3.) In 2014, OEP Technologie Holding B.V. ("OEP Holding") and Plaintiff entered into a Sale and Transfer Agreement (the "Sale Agreement"), pursuant to which OEP Holding sold, and Plaintiff purchased, a "Partial Partnership Interest" in OEP GbR for a total purchase price of €50,000. (Harmzen Decl. ¶¶ 7-8, Ex. 1.) Through a

contemporaneous Loan Agreement, OEP Holding loaned Plaintiff the €50,000 to fund the purchase. (*Id.* ¶ 9, Ex. 2.)

In or about September 2017, Smartrac sold Neology. (*See* Comp. ¶ 16.) As part of the sale, Plaintiff alleges he "was informed" that his partnership stake "had a value of $0[.]" (*See id.* ¶ 18; Harmzen Decl. ¶¶ 7-9, Exs. 1-2.) Plaintiff alleges that company executives refused to provide him information regarding his partnership stake or Neology's sale. (*See* Comp. ¶ 19.) Despite these alleged concerns, on or about May 23, 2018, Plaintiff entered into a Sale and Transfer and Loan Termination Agreement (the "Termination Agreement"), pursuant to which he sold his "Partial Partnership Interest" in OEP GbR back to OEP Holding. (*See* Comp. ¶ 21; Harmzen Decl. ¶ 10, Ex. 3.)

Plaintiff alleges "[u]pon information and belief" that JPMC "transferred valuable intellectual property from Neology to Smartrac in order to devalue Neology at the time of the sale." (Comp. ¶ 17.) Plaintiff also alleges that JPMC participated in a joint "scheme to deflate Neology's 'Fair Market Value[.]'" (*Id.* ¶¶ 17-21.) Based on these events, Plaintiff alleges he was "forced to release" his "Partial Partnership Interest[.]" (*Id.* ¶ 21.)

Plaintiff's initial Complaint named only JPMC as a defendant. Plaintiff sued JPMC in October 2023 (six years after the events alleged), asserting claims for (1) fraudulent inducement, (2) fraudulent concealment, (3) negligent misrepresentation, and (4) violation of California Penal Code section 496. (*Id.* ¶¶ 22-54.)

JPMC removed the action to this Court on diversity grounds on November 16, 2023. (ECF No. 1.) On December 8, 2023, Plaintiff's counsel sent JPMC's counsel a "settlement demand letter," demanding $1,900,000 to settle Plaintiff's claims. (Declaration of Paul Ferak ("Ferak Decl."), ¶ 4, Ex. B.)

On January 5, 2024, JPMC filed a motion to compel arbitration (ECF No. 5), and in the alternative, a motion to dismiss the Complaint (ECF No. 6). On January 26, 2024, without seeking leave to amend, Plaintiff filed the FAC naming four additional defendants—Mr. Smith, Neology, Mr. Velasco and Avery Dennison. Plaintiff's FAC also added 14 causes of action based on the same events at issue in the initial Complaint.

Plaintiff filed the instant Motion on February 2, 2024. (ECF No. 15.) He argues that, because the FAC adds non-diverse defendants and there is not $75,000 in controversy, the action should be remanded. The Motion should be denied.

## III.   LEGAL ARGUMENT

### A.   Plaintiff Filed a Diversity-Destroying Amendment Without Leave of Court

To file a diversity-destroying amendment following removal, a plaintiff must seek leave of court *before* amending so the court can determine whether joinder is appropriate. *See Farzam*, 2018 U.S. Dist. LEXIS 87993, at \*5-7 (striking new defendants in amended complaint *sua sponte*, denying motion to remand, and holding plaintiff must "seek leave to amend before joining diversity-destroying defendants following removal, even where the amendment is filed as a matter of right under Rule 15(a)(1)"); 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.").

Plaintiff did not seek or obtain leave of Court before filing the FAC, which he filed to destroy diversity. The FAC should be stricken for this reason alone. *See, e.g.*, *Clinco*, 41 F. Supp. 2d at 1088 (striking first amended complaint after reviewing motion to remand); *Brown v. Ikon Office Solutions, Inc.*, 2009 U.S. Dist. LEXIS 102486, at \*3 (N.D. Cal. Nov. 4, 2009) (striking amended complaint because plaintiffs "did not seek leave of Court to file their amended complaint" that destroyed diversity); *Cisneros v. Aurora Bank, FSB*, 2012 U.S. Dist. LEXIS 198308, at \*3-5 (C.D. Cal. Sep. 17, 2012) (striking amended complaint *sua sponte* because it was filed without court permission and purported to destroy diversity).[4]

Even if Plaintiff had sought leave to file the FAC, joinder is unsupported. In determining whether joinder is appropriate, the Court must consider:

---

[4] In the alternative, if the Court declines to strike the FAC in its entirety, the Court should deny joinder of the diversity-destroying Defendants and strike them from the FAC.

(1) whether the new defendants should be joined under Fed. R. Civ. P. 19(a) as 'needed for just adjudication'; (2) whether the statute of limitations would preclude an original action against the new defendants in state court; (3) whether there has been unexplained delay in requesting joinder; (4) whether joinder is intended solely to defeat federal jurisdiction; (5) whether the claims against the new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff.

*Cisneros*, 2012 U.S. Dist. LEXIS 198308, at *3 (citing *Palestini v. Gen. Dynamics Corp.*, 193 F.R.D. 654, 658 (S.D. Cal. 2000)).

Plaintiff's Motion does not address *any* of these factors, and all of them favor denying joinder.

***First***, the newly joined parties—Mr. Smith, Neology, Mr. Velasco and Avery Dennison—are not needed for "complete relief," and their absence would not "impede" their ability to protect their interests or result in "inconsistent obligations." *See* Fed. R. Civ. P. 19(a). Plaintiff's claims rest on the allegation that JPMC deceived him into releasing his "investment" in the Smartrac MEP when One Equity Partners, JPMC's alleged "private equity arm," acquired Neology from Smartrac in 2017. (*See* FAC ¶¶ 17, 20-21, 32, 38.) He alleges that JPMC valued Neology in the sale and destroyed his partnership equity. (*Id.* ¶ 29.)[5] Putting aside the claims' lack of merit, according to Plaintiff's own allegations, the newly added Defendants are dispensable.

Plaintiff does not allege Mr. Smith was involved in any valuation of Neology, nor does he allege that Mr. Smith communicated with him when he relinquished his investment. As for Neology and Mr. Velasco—the Defendants which purportedly destroy diversity[6]—Plaintiff simply alleges they were "involved" and part of the same group of

---

[5] Again, as explained in JPMC's motion to compel arbitration and above, Plaintiff's investment in the "Smartrac MEP" was actually an investment in OEP GbR—and the investment's value was tied to the performance of OEP Technologie and its subsidiaries, including Smartrac. (ECF No. 5 at pp. 1-3.)

[6] Plaintiff's Motion argues that diversity is destroyed because Neology is a California citizen (Mot. at pp. 1, 5), and the FAC merely alleges the residency of Mr. Velasco rather than his citizenship (FAC ¶¶ 1, 7).

supposed wrongdoers led by JPMC. (*See id.* ¶¶ 29-42.) And as to Avery Dennison, Plaintiff merely alleges that it acquired Smartrac in 2020,[7] three years after the alleged events underlying Plaintiff's claims. (*Id.* ¶ 39.) In addition, Plaintiff "seeks only 'money damages, which could be fully satisfied by'" JPMC. *See Saad Badrh v. Amazon.com Servs. LLC*, 2023 U.S. Dist. LEXIS 151337, at *10 (C.D. Cal. Aug. 28, 2023).[8] Thus, Mr. Smith, Neology, Mr. Velasco and Avery Dennison are "not crucial to complete relief." *Id.* Nor has Plaintiff "persuasively" shown that a new action against any parties would be necessary and result in "inconsistent obligations." *See Baker v. Nutrien AG Sols., Inc.*, 2022 U.S. Dist. LEXIS 140125, at *10-13 (E.D. Cal. Aug. 5, 2022).

**Second**, all of Plaintiff's claims accrued in 2017 and are barred by the applicable statute of limitations. (*See* ECF No. 6, JPMC motion to dismiss at pp. 4-6.) Plaintiff has not shown that any purportedly timely claims would be time-barred if he is forced to file a subsequent suit against Mr. Smith, Neology, Mr. Velasco or Avery Dennison. *See Saad Badrh*, 2023 U.S. Dist. LEXIS 151337, at *11 ("Denial of joinder is generally appropriate where a plaintiff 'would not be time-barred from filing a new action in state court.'").

**Third**, Plaintiff unnecessarily delayed filing the FAC. *See Saad Badrh*, 2023 U.S. Dist. LEXIS 151337, at *14 ("Courts look to whether the 'moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'"). All the facts and theories in the FAC were available to him when he filed the initial Complaint in October 2023, and Plaintiff identifies nothing that he learned between the initial complaint and the FAC. *See Baker*, 2022 U.S. Dist. LEXIS 140125, at *14 ("Plaintiff has simply not persuasively argued that she did not know of the basis for any potential claim . . . until she filed her FAC on October 27, 2021.").

---

[7] Plaintiff's sole, conclusory allegation about Avery Dennison – stated no less than twelve times in the FAC – is that "Defendant Avery is responsible for Smartrac's actions because Avery acquired Smartrac in March 2020." (*See* FAC ¶¶ 59, 70, 83, 102, 126, 157, 183, 213, 253, 295, 334, 345.)

[8] Unless otherwise indicated, all internal citations are omitted.

**Fourth**, because the facts and theories alleged in the FAC were available to Plaintiff when he filed the initial Complaint, and because Plaintiff filed the FAC after the case was removed on diversity grounds, "the circumstances here strongly suggest that plaintiff's sole motivation in adding [the new Defendants] . . . is to defeat federal subject matter jurisdiction." *Baker*, 2022 U.S. Dist. LEXIS 140125, at *15-19; *accord Saad Badrh*, 2023 U.S. Dist. LEXIS 151337, at *15 ("[T]he true motives are suspect given the unexplained delay in adding Cerda as a party and Badhr's ability to obtain full compensation from the present Defendants."). In fact, Plaintiff's counsel told counsel for JPMC that Plaintiff would be filing an amended complaint that destroys diversity because he prefers to be in state court. (Ferak Decl., ¶ 3.)

**Fifth**, Plaintiff's claims against all parties, including the newly joined Defendants, are meritless. According to Plaintiff's own allegations, his claims accrued in September 2017 and have a three-year statute of limitations. (*See* ECF No. 6, JPMC motion to dismiss at pp. 4-6.) Plaintiff's lawsuit filed in October 2023 is more than three years late. (*Id.*) Further, all Plaintiff's claims sound in fraud, but he fails to allege the particularized facts required under Rule 9(b). (*See id.* at pp. 7-8.) His claims also are subject to mandatory arbitration, and thus he proceeds in the wrong forum. (*See* ECF No. 5.)

**Sixth**, Plaintiff "fails even to address whether he will suffer prejudice. It is not the role of the Court" or Defendants to make Plaintiff's arguments for him. *Saad Badrh*, 2023 U.S. Dist. LEXIS 151337, at *16; *see also Collins v. San Diego Metro. Transit Sys.*, 2013 U.S. Dist. LEXIS 160638, at *6 n.1 (S.D. Cal. Nov. 7, 2013) ("[T]he Court declines to consider new facts, issues, or arguments in a reply brief that were not presented in the moving papers."). "Moreover, '[b]ecause none of the claims . . . appears valid, there is no basis to conclude that Plaintiff would be prejudiced.'" *Saad Badrh*, 2023 U.S. Dist. LEXIS 151337, at *16.

In sum, even if the Court were inclined to construe the FAC as a delinquent request for leave, all factors weigh in favor of denying joinder.

## B. The Amount Placed in Controversy by Plaintiff's Claims Exceeds $75,000

The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of any defendant's liability. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "In assessing the amount in controversy, [the court] may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy." *Chavez*, 888 F.3d at 416. If a plaintiff challenges jurisdiction by seeking remand, then "both sides submit proof" of the amount in controversy. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014).[9]

An amount-in-controversy greater than $75,000 is apparent on the face of the Complaint and supported by the post-removal evidence. Plaintiff's investment at issue was valued at €50,000. (Harmzen Decl. ¶¶ 7-9, Exs. 1-2.) Plaintiff alleges that he was fraudulently induced to relinquish the entirety of that €50,000 investment. (*See* Comp., ¶¶ 18, 21, 26.) The reasonable assumption drawn from these allegations is that Plaintiff has put in controversy, at minimum, his investment's stated €50,000 value. *See Ruff v. Wilson Logistics, Inc.*, 2022 U.S. Dist. LEXIS 86544, at *10 (N.D. Cal. May 12, 2022) (damages assessments may use assumptions grounded in the complaint); *Feder v. Mercedez-Benz United States, LLC*, 2023 U.S. Dist. LEXIS 192479, at *4 (C.D. Cal. Oct. 24, 2023) (similar). At the very least, however, the Complaint alleges actual damages exceeding $25,000. Indeed, Plaintiff repeatedly alleges actual damages "in excess of the jurisdictional minimum" for unlimited civil cases in the Superior Court of California—

---

[9] Plaintiff fails to present any evidence showing that less than $75,000 is in controversy. Instead, he argues that he "never alleges in either the original Complaint or the First Amended Complaint that the amount in controversy is at least €50,000[.]" (Mot. at p. 6.) This cursory argument does not support remand, and Plaintiff does not even deny that more than $75,000 is in controversy. *See, e.g.*, *Roa v. TS Staffing Servs., Inc.*, 2015 U.S. Dist. LEXIS 7442, at *4-5 (C.D. Cal. Jan. 22, 2015) (finding removal proper where plaintiff did not contest the veracity of defendant's allegations regarding the amount-in-controversy and submitted no independent evidence for the court to consider, but instead asserted only that the allegations lacked sufficient evidentiary support).

or more than $25,000. (*See* Comp. ¶¶ 27, 37, 46; *see also* ECF No. 1 at Ex. B (Civil Case Cover Sheet).)[10] Plaintiff also seeks "three (3) times the amount of his actual damages" under California Penal Code § 496(c). (Comp. ¶¶ 52-53.)

Thus, regardless of whether a figure of "more than $25,000" or €50,000 is used, Plaintiff's alleged actual damages trebled exceed $75,000. *See Francis*, 2019 U.S. Dist. LEXIS 54647, at *3-4 (upholding removal based on requested treble damages); *Chess v. CF Arcis IX LLC*, 2020 U.S. Dist. LEXIS 129652, at *11-12 (N.D. Cal. July 22, 2020) ("Here Plaintiffs are making claims for treble damages based on the value of their deposits. . . . Therefore, due to the claims for treble damages in the first cause of action, the amount in controversy is met."); *Newson v. Allstate Ins. Co.*, 2018 U.S. Dist. LEXIS 227054, at *6-7 (C.D. Cal. July 24, 2018) (amount in controversy met because plaintiff sought $30,000 in compensatory damages trebled); *Safari Club Int'l v. Rudolph*, 2014 U.S. Dist. LEXIS 196110, at *1-2 (C.D. Cal. Jan. 16, 2014) ("[T]he amount of damages sought exceeds $75,000. . . . [P]laintiffs claim damages in excess of the jurisdiction minimum for unlimited actions, $25,000. . . [and] [a]n award is subject to trebling.").

In addition, Plaintiff seeks punitive damages for alleged fraud (Comp. ¶¶ 29, 39), as well as recovery of attorneys' fees. (*Id.* ¶ 53 (citing Cal. Pen. Code § 496(c)).) *See, e.g.*, *Fritsch v. Swift Transp.*, 899 F.3d 785, 794 (9th Cir. 2018) ("[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met"); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1032-33 (N.D. Cal. 2002) (amount in controversy satisfied where gap in claim for actual damages of less than $75,000 was filled by claim for punitive damages). Courts in

---

[10] For example, Plaintiff alleges in his negligent misrepresentation claim that, as a result of JPMC's purportedly negligent misrepresentations, he was damaged "in an amount . . . in excess of the jurisdictional minimum," or more than $25,000. (Comp. ¶¶ 42-46.) *See Sykes v. A. Duda & Sons, Inc.*, 1991 U.S. App. LEXIS 18793, at *2 (9th Cir. Aug. 8, 1991) (explaining the measure of damages for negligent misrepresentation claims). Thus, Plaintiff expressly alleges economic losses greater than $25,000, for which he also seeks treble damages. (Comp. ¶¶ 52-53).

the Ninth Circuit have described a 1:1 ratio of punitive damages to compensatory damages as "conservative" for purposes of assessing the amount in controversy. *Jian-Ming Zhao v. RelayRides, Inc.*, 2017 U.S. Dist. LEXIS 204415, at *45 (N.D. Cal. Dec. 12, 2017) ("The Court [ ] finds that the ratio of 1:1 between punitive and economic damages . . . is a 'conservative' ratio for purposes of calculating the amount in controversy.").[11] Litigating this action through trial also will cost $75,000 in attorneys' fees, if not more. (Ferak Decl., ¶¶ 6-9.) *See Correa v. Ford Motor Co.*, 2023 U.S. Dist. LEXIS 123618, at *7-8 (C.D. Cal. July 17, 2023) (finding amount in controversy satisfied by attorneys' fees estimated in declaration of defense counsel). Thus, accounting for these additional forms of relief sought in Plaintiff's Complaint, the $75,000 amount in controversy is easily satisfied.

Finally, it is disingenuous for Plaintiff even to suggest that the amount in controversy does not exceed $75,000. On December 8, 2023, Plaintiff, through his counsel, sent a demand letter expounding on his claims and demanding ***$1,900,000*** to resolve this action. (Ferak Decl., ¶ 4, Ex. B.) *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.3 (9th Cir. 2002) (rejecting argument that Rule 408 prohibits use of settlement offers to determine the amount in controversy); *Ives*, 504 F. Supp. 3d at 1098 ("[W]hether through Plaintiff's $249,999 settlement demand, or through the emotional distress damages, punitive damages, and attorneys' fees, or through a combination of both, Defendant has shown *by a preponderance of the evidence* that the amount in controversy requirement is met.") (emphasis in original).

## C.  Independent of Diversity, the Court Has Subject Matter Jurisdiction under the New York Convention

Even if the Court found diversity jurisdiction lacking, the Court can and should retain jurisdiction over this action under the New York Convention. *See* 9 U.S.C. § 203

---

[11] *See also Zapata Fonseca v. Vigo Importing Co.*, 2016 U.S. Dist. LEXIS 148457, at *4 (N.D. Cal. Oct. 26, 2016) (similar).

("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.").

Removal is proper "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement . . . falling under the Convention[.]" *See* 9 U.S.C. § 205. "The statute invites removal of cases whose relation to an agreement . . . under the Convention is based on an affirmative defense," rather than on grounds apparent on the "face of the complaint." *Infuturia Global Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011) ("'[T]he ground for removal provided in this section need not appear on the face of the complaint[.]'").

The Ninth Circuit has broadly interpreted the phrase "relates to" in 9 U.S.C. § 205 as meaning "whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case[.]" *Id.* (emphasis in original) (citing *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) ("'[T]he district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense.")). "Although [courts] generally construe removal statutes strictly, [] the plain language of § 205 provides federal courts with remarkably broad removal authority[.]" *Infuturia Global Ltd.*, 631 F.3d at 1138 n.5.

"In deciding whether the parties entered an arbitration agreement falling under the Convention, courts consider four questions: (1) is there a written agreement to arbitrate; (2) is the agreement commercial in nature; (3) does the agreement designate a country that is a signatory to the Convention; and (4) is a party to the agreement a foreign citizen or entity." *See Mullen Techs., Inc. v. Qiantu Motor (Suzhou) Ltd.*, 2020 U.S. Dist. LEXIS 116323, at *7 (S.D. Cal. July 1, 2020) (citing *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1243 (S.D. Cal. 2000)).

This action (1) "relates to" multiple arbitration agreements (2) falling under the

Convention. As discussed above and in JPMC's motion to compel arbitration (ECF No. 5), the Sale Agreement, Loan Agreement and Termination Agreement at the heart of this case (collectively, the "Mullis/OEP Agreements") all contain broad arbitration provisions governed by the Convention. Under established estoppel principles, Defendants may invoke these arbitration agreements as nonsignatories. Indeed, all Defendants support removal and consent to this Court's jurisdiction. Thus, the Court should retain jurisdiction independent of diversity.

### 1. Plaintiff's Claims "Relate to" the Mullis/OEP Agreements

The Mullis/OEP Agreements contain broad arbitration provisions requiring all disputes arising out of or in connection with the Agreements to be arbitrated in Germany. (Harmzen Decl., Ex. 1 § 5.2; Ex. 2 § 6.5; Ex. 3 § 5.3.) All of Plaintiff's claims relate to the Mullis/OEP Agreements; indeed, the Agreements provide the basis both for Plaintiff's investment at issue and his claims for purported fraud.

The Ninth Circuit applies an expansive construction to arbitration provisions that, by their terms, apply to all disputes "arising out of or in connection with" the agreement, as the Mullis/OEP Agreements do here. (*Id.*) *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999) (arbitration clause applying to "all disputes arising in connection with this Agreement" must be interpreted expansively). "Thus, when an arbitration agreement employs the phrase 'in connection with,' a party's factual allegations 'need only 'touch matters' covered by the contract containing the arbitration clause' in order for the court to require arbitration." *Nationwide Agribusiness Ins. Co. v. Buhler Barth GMBH*, 2015 U.S. Dist. LEXIS 147717, at *16 (E.D. Cal. Oct. 29, 2015).

All Plaintiff's claims come within this broad scope. For example, Plaintiff alleges that Defendants fraudulently induced him to release his "interest" via the Termination Agreement. (*See* FAC ¶¶ 241-268.) He alleges that Defendants defrauded him and misrepresented facts concerning his investment and the Mullis/OEP Agreements. (*Id.* ¶¶ 158-161, 208-211, 288-298, 341-359.) And he alleges that Defendants purportedly violated California Penal Code § 496 by stealing money that should have been paid to him

because of his investment, which he obtained through the Sale Agreement and Loan Agreement, and relinquished through the Termination Agreement. (*Id.* ¶¶ 82-90, 101-104.) Thus, it is clear that Plaintiff's disputes "relate to" the Mullis/OEP Agreements. *See Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*, 2023 U.S. Dist. LEXIS 227709, at *15 (C.D. Cal. Dec. 19, 2023) ("Because the claims at issue . . . touch matters covered by the [agreement], they 'relate to' the arbitration agreement . . . under § 205.").[12]

## 2. The Mullis/OEP Agreements Fall Under the Convention

Further, the Mullis/OEP Agreements fall under the Convention because they (1) are in writing, (2) arise from a commercial relationship, (3) require arbitration in Germany (a Convention signatory), and (4) include at least one signatory that is not an American citizen. *See Mullen Techs.*, 2020 U.S. Dist. LEXIS 116323, at *7; *Balen v. Holland Am. Line, Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009).

*First*, the written agreements Plaintiff signed each contain "an arbitral clause in a contract or an arbitration agreement[.]" *Mousebelt Labs Pte. LTD v. Armstrong*, 2023 U.S. Dist. LEXIS 97679, at *7 (N.D. Cal. May 24, 2023). Thus, there is a written agreement to arbitrate. (*See* Harmzen Decl., Exs. 1-3.)

*Second*, the Mullis/OEP Agreements are commercial in nature because they relate to purchase and sale of shares in a private partnership for economic gain. *See Trajkovski Inv. AB v. I.Am.Plus Elecs., Inc.*, 2021 U.S. Dist. LEXIS 247685, at *8 (C.D. Cal. Dec. 29, 2021) (finding agreement for purchase of stock commercial in nature under the Convention); *see also Mitchell v. Tillett*, 2016 U.S. Dist. LEXIS 153686, at *2 (N.D. Cal.

---

[12] *See also Tech. & Intellectual Prop. Strategies Grp. Prof'l Corp. v. Insperity, Inc.*, 2012 U.S. Dist. LEXIS 170714, at *32-38 (N.D. Cal. Nov. 29, 2012) (finding claims alleging fraudulent inducement and fraudulent and negligent misrepresentations about subject matter of contract arbitrable); *United Ass'n Local Union No. 26 v. Big Rooter/Nelson Plumbing & Mech., Inc.*, 2011 U.S. Dist. LEXIS 5922, at *10 (W.D. Wash. Jan. 14, 2011) ("Big Rooter's fraudulent inducement and misrepresentation claims are subject to the arbitration provision[.]"); *Hopkins & Carley, ALC v. Thomson Elite*, 2011 U.S. Dist. LEXIS 38396, at *9-23 (N.D. Cal. Apr. 6, 2011) (compelling arbitration of fraudulent inducement and negligent misrepresentation claims despite narrower contract language).

Oct. 28, 2016) (agreement that flowed from course of employment was commercial under the Convention); *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*, 2020 U.S. Dist. LEXIS 158387, at \*51 (N.D. Cal. Aug. 31, 2020) ("[T]he SMIA involves a commercial relationship, as it relates to 'business transactions[.]'").

**Third**, the Mullis/OEP Agreements require arbitration in Germany (Harmzen Decl., Ex. 1 § 5.2; Ex. 2 § 6.5; Ex. 3 § 5.3)—a signatory to the Convention. *See Twitch Interactive, Inc. v. Fishwoodco GmbH*, 2023 U.S. Dist. LEXIS 94786, at \*21 (N.D. Cal. May 31, 2023) (noting Germany is a Convention signatory); *Sensor Dynamics AG Entwicklungs-Und Produktionsgesellschaft v. Memsco LLC*, 2008 U.S. Dist. LEXIS 126616, at \*4 (C.D. Cal. Oct. 10, 2008) (similar).

**Fourth**, OEP Holding, a party to the Mullis/OEP Agreements, is organized under the laws of the Netherlands and is therefore a citizen of the Netherlands. (Harmzen Decl. ¶ 1; Ex. 1 p. 1.) *See Mousebelt Labs Pte. LTD*, 2023 U.S. Dist. LEXIS 97679, at \*8 ("MouseBelt is organized under the laws of Singapore and is therefore a citizen of Singapore.").

In sum, the Mullis/OEP Agreements fall under the Convention, the Court has federal question jurisdiction under the Convention pursuant to 9 U.S.C. § 203, and the case is removeable (again, if necessary) any time before trial pursuant to 9 U.S.C. § 205.

### 3. Plaintiff Cannot Evade Arbitration by Suing Nonsignatories.

Defendants, as nonsignatories, also may compel arbitration under the equitable estoppel doctrine. The Supreme Court has held that nonsignatories may invoke the equitable estoppel doctrine to compel arbitration in cases falling under the New York Convention. *See GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1646 (2020) ("Nothing in the drafting history suggests that the Convention sought to prevent contracting states from applying domestic law that permits nonsignatories to enforce arbitration agreements in additional circumstances.").

To decide whether a nonsignatory may compel arbitration under the Convention, courts apply federal common law rather than state law. *See Mousebelt Labs Pte. LTD*,

2023 U.S. Dist. LEXIS 97679, at *13. In the Ninth Circuit, equitable estoppel applies when "'the subject matter in dispute [is] intertwined with the contract providing for arbitration.'" *Id.* at *22 (citing *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1169 (9th Cir. 2021)). The intertwinement standard is satisfied where the plaintiff's claims are predicated on rights that exist "only by virtue" of the contracts containing arbitration provisions, and the harm allegedly suffered "cannot be divorced from" those rights. *See Mousebelt Labs Pte. LTD*, 2023 U.S. Dist. LEXIS 97679, at *22-23. The standard also is satisfied "where the signatory raises allegations of collusive conduct between the nonsignatory and other signatories." *Id.* at *26.

"That is, a subject matter in dispute may be properly characterized as intertwined with the contract providing for arbitration where the signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory, *or* where the signatory raises allegations of collusive conduct between the nonsignatory and other signatories." *Id.* (emphasis added); *accord Am. Chung Nam, LLC*, 2023 U.S. Dist. LEXIS 227709, at *21 ("Under federal common law, equitable estoppel requires that the subject matter of the dispute be 'intertwined with the contract providing for arbitration.' . . . This standard is satisfied where a signatory 'raises allegations of collusive misconduct between the nonsignatory and other signatories.'"). Here, the standard is satisfied both ways.

***First***, Plaintiff's alleged damages are the purported monies he should have received for his interest in the Smartrac MEP, but for Defendants' purported conduct that "devalue[d]" Plaintiff's equity and caused him to relinquish his interest. (FAC ¶¶ 88, 113-114, 149, 152, 159, 196, 205, 208, 244, 258, 274, 284, 288, 297.) Yet Plaintiff acquired his partnership interest through the Sale Agreement and Loan Agreement. (Harmzen Decl., Exs. 1-2.) The value of that interest is determined pursuant to the Sale Agreement and the incorporated OEP GbR partnership agreement (including its earnout provisions). (*See id.*, Ex. 1 §§ 1.2, 1.3, 4.1, 4.2.) And Plaintiff alleges that Defendants fraudulently induced him to sell his interest for inadequate value by entering into the Termination Agreement. (*See* FAC ¶ 262; Harmzen Decl., Ex. 3 §§ 1.1, 1.2, 1.3.)

In other words: Plaintiff's claims only exist by virtue of the Mullis/OEP Agreements; any determination of Plaintiff's rights or the value of his partnership interest depends on the Mullis/OEP Agreements; and neither the validity of the claims nor Plaintiff's alleged injuries can be separated from the Mullis/OEP Agreements, all of which require arbitration. Like in *Mousebelt*, Plaintiff's claims are predicated on allegations that Defendants purportedly destroyed the value of Plaintiff's investment through a scheme of wrongful conduct with the signatory (FAC ¶¶ 88, 113-114, 149, 152, 159, 196, 205, 208, 244, 258, 254, 284, 288, 297), and the alleged harm "cannot be divorced from" the underlying agreements. 2023 U.S. Dist. LEXIS 97679, at *22-23.

***Second***, equitable estoppel also applies because Plaintiff alleges collusive misconduct between OEP Holding (a signatory) and Defendants (nonsignatories). *See Am. Chung Nam, LLC*, 2023 U.S. Dist. LEXIS 227709, at *21. Plaintiff alleges a purported scheme to devalue Neology to force Plaintiff to release his interest in the Smartrac MEP. (*See* FAC ¶¶ 88, 113-114, 149, 152, 159, 196, 205, 208, 244, 258, 274, 284, 288, 297.) The purported participants in that scheme include not only Defendants, but also OEP Holding, including through its Director, Philipp von Muerers. (*See id.* ¶ 29; Harmzen Decl., Exs. 1-3 at signature pages.) Thus, the dispute is "properly characterized as intertwined with the contract[s]" for the additional reason that Plaintiff alleges "collusive conduct between the nonsignatory and other signatories." *Mousebelt Labs Pte. LTD*, 2023 U.S. Dist. LEXIS 97679, at *26.[13]

### 4. Retaining Jurisdiction Under the Convention Promotes Efficiency.

The Court should retain jurisdiction pursuant to the Convention in the interests of judicial efficiency. When JPMC removed this case in November 2023, diversity jurisdiction existed, and JPMC thus removed the action on that basis. If the action is

---

[13] In addition, OEP Holding is an indirect subsidiary of JPMC (Harmzen Decl. ¶ 1), and "'[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.'" *Allen v. Shutterfly, Inc.*, 2020 U.S. Dist. LEXIS 167910, at *23 (N.D. Cal. Sep. 14, 2020).

remanded because diversity jurisdiction no longer exists, some or all Defendants will simply remove the action again under the Convention, which they may do at any time before trial. *See* 9 U.S.C. § 205. Thus, even if the Court permits Plaintiff to proceed with the FAC, remanding this action for lack of diversity would only cause delay and multiply the proceedings.

Courts across the country have reached similar conclusions. For example, in *Reed v. Corinthian Coll., Inc.*, 2005 U.S. Dist. LEXIS 54961, at *2 (W.D. Wash. Dec. 6, 2005), defendants removed the action on diversity grounds and moved to compel arbitration. Plaintiff subsequently filed an amended complaint to add a diversity-destroying defendant. *Id.* Defendants moved to strike plaintiff's amended complaint for failing to seek leave, and in response, plaintiff filed a motion for leave to amend and a motion to remand. *Id.* In electing to retain jurisdiction and grant the motion to compel arbitration, the court reasoned that "[e]ven if this Court were to grant leave to amend and then to grant remand, the issue of compelling arbitration would very likely arise again, thus wasting judicial resources and the parties' efforts." *Id.* at *6.

The court in *Borsack v. Chalk & Vermilion Fine Arts*, 974 F. Supp. 293 (S.D.N.Y. 1997) also reached a similar conclusion. In *Borsack*, the defendants removed the action to federal court on diversity grounds and filed a motion to compel arbitration. *Id.* at 295-96. Plaintiff moved to remand, arguing that complete diversity did not exist. *Id.* Defendants argued that, even if diversity was lacking, the court had subject matter jurisdiction under the Convention. *Id.* at 297-98. The court agreed, denied remand and compelled plaintiff's claims to arbitration. *Id.* at 298-302.

The same rationale applies here. If the FAC is allowed to stand and the Court remands the action for lack of diversity, one or more Defendants will simply remove the case again under the Convention. Removal would be timely under 9 U.S.C. § 205, and the parties will find themselves back before this Court. Thus, to promote efficiency, the Court should maintain jurisdiction under the Convention independent of diversity.

# IV.  CONCLUSION

Remand should be denied. Plaintiff joined non-diverse parties without seeking or obtaining leave of Court. Even if he had sought leave, the FAC does not meet the joinder standards articulated by this Circuit, and the amount in controversy for diversity jurisdiction is satisfied. In any event, the Court has subject matter jurisdiction under the New York Convention, and remand should be denied for this independent reason.

Dated: March 11, 2024              GREENBERG TRAURIG, LLP

                                   By: */s/ Michael E. McCarthy*
                                          Michael E. McCarthy
                                          Layal L. Bishara
                                          *Attorneys for Defendants*
                                          *JPMORGAN CHASE & CO. and RICK*
                                          *SMITH*

Dated: March 11, 2024              GOODWIN PROCTER LLP

                                   By: */s/ Laura A. Stoll*
                                          Laura A. Stoll
                                          Ariel E. Rogers
                                          601 South Figueroa Street
                                          Los Angeles, CA 90017
                                          Tel: (213) 426-2625
                                          Fax: (213) 289-7725
                                          LStoll@goodwinlaw.com
                                          ARogers@goodwinlaw.com
                                          *Attorneys for Defendant*
                                          *AVERY DENNISON CORPORATION*

Dated: March 11, 2024              FOLEY HOAG LLP

                                   GLASER WEIL FINK HOWARD JORDAN &
                                   SHAPIRO LLP

                                   By: */s/ Emil A. Petrossian*
                                          Robert Haney Jr. – *Pro Hac Vice*
                                          *Application Forthcoming*

FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 812-0400
RHaney@foleyhoag.com

Leah S. Rizkallah – *Pro Hac Vice*
*Application Forthcoming*
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: (617) 832-1000
LRizkallah@foleyhoag.com

Emil A. Petrossian
Alexander Miller
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP
600 West Broadway, Suite 1080
San Diego, CA 92101
Tel: (619) 765-4380
EPetrossian@glaserweil.com
AMiller@glaserweil.com
*Attorneys for Defendants*
*NEOLOGY, INC. and FRANCISCO*
*MARTINEZ DE VELASCO*

I, Michael E. McCarthy, certify that the content of DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND is acceptable to all parties signing this motion, as required by the United States District Court for the Southern District of California Electronic Case Filing Administrative Policies and Procedures.

Dated: March 11, 2024          GREENBERG TRAURIG, LLP

By: */s/ Michael E. McCarthy*
          Michael E. McCarthy
          Attorneys for Defendants
          JPMORGAN CHASE & CO. and RICK
          SMITH